TURPIN v. SUDDUTH.

1. "CASE"—PRACTICE.—This Court will accept as facts in a case only such facts as appear in the "Case," and as are admitted on the record or in open Court.

2. CUSTOM—USAGE.—EVIDENCE of custom or usage is not admissible to prove an independent fact.

3. RECORDING—MORTGAGES—DEEDS.—The actual purchaser of a tract of land, before amendment of the registry acts in 1898, without actual notice of a mortgage thereon to master for balance of purchase money at judicial sale, which mortgage is not recorded within the forty days, takes the land freed from the mortgage whether his deed is recorded within forty days after delivery or not. MR. JUSTICE GARY *dissents*. *McNamee* v. *Hucabee*, 20 S. C., 190, distinguished from this case.

4. LIMITATION OF ACTIONS—ADVERSE POSSESSION—CHARGE.—An instruction that if one and his heirs had been in uninterrupted adverse possession of a tract of land for ten years that would give them title, is correct.

Before WATTS, J., Greenville, August, 1897. Affirmed.

Action for possession of real estate by Rosalie A. Turpin *v*. Deborah Jane Sudduth *et al.* Judge charged the jury as follows:

This is an action brought by the plaintiff, Rosalie A. Turpin, against the defendant, Deborah J. Sudduth, and others, to recover possession of real estate. The plaintiff here contends that in 1885 one S. C. Dickson bought at a judicial sale here the land in dispute, and executed a mortgage to secure part payment of the purchase money, and that at another judicial sale she purchased this property, and, therefore, asks for possession of the same. The defendants come into Court and deny that the plaintiff is entitled to recover. They allege that in 1885 S. C. Dickson was the owner of this property and sold this land to Peter C. Sudduth, and that he had no notice, actual or constructive, that there was a mortgage over it, and that since that time Sudduth, husband and father, was, up to 1888, in open and notorious possession of the property, and that since his death they have held in adverse possession against the world. Now, you are sole judges of the facts in the case, and it is my duty to give you the law in the case, and it is your duty to apply the facts to the law as I give it to you. The law applicable to this case is in a narrow compass, as I view it, and I charge you that in 1885, if S. C. Dickson bought that property, and got a deed for the property from the officer of the Court selling it, and that he executed and delivered this mortgage, which you have heard read, under whom Miss Turpin claims, and that if it was not recorded in forty days after execution, and if the testimony satisfies you that Sudduth bought the property in the meantime and within the forty days, and that Dickson gave no notice of it and made the deed to it to Sudduth, the plaintiff could not recover. If the testimony satisfies you that Dickson bid off this property in the fall of 1885, and did not comply with the terms of sale until January of the next year, and that at the same time, January 14, 1886, the mortgage was executed and recorded at the same time, then I charge you, as a matter of

law, the plaintiff would be entitled to recover. Now, it all depends upon the view you take of the case as to when Dickson got possession of the land by deed and when he sold it. If he got it in November and sold it between that and January, and Sudduth had no actual or constructive notice of the existence of this mortgage, I charge you, as a matter of law, if the mortgage was given in November and was not recorded in forty days, then the plaintiff would not be entitled to recover; but if you believe that the mortgage was recorded in the forty days after it was given, that would be constructive notice to Sudduth, and the plaintiff would be entitled to recover. Or, if you believe that this property was knocked down to Dickson that day, November, 1885, and entered upon Douthit's books, but he did not comply until January, and he got his deed at that time, and the mortgage was properly recorded, then Mr. Sudduth bought it subject to the mortgage, and Mr. Sudduth would not be entitled to the land. If Sudduth had no notice of it, actual or constructive, the plaintiff would not be entitled to recover; but if he had actual or constructive notice of it, then the plaintiff could recover. But if this deed and mortgage was executed at the same time, and the mortgage was recorded in forty days, then he bought it subject to that, and the plaintiff would be entitled to recover. If you find for the plaintiff, say: We find for the plaintiff the land in dispute. If you find for the defendant, say: We find for the defendant.

The plaintiff's counsel request me to charge you:

1. A deed or mortgage bears date, so far as the recording acts are concered, from the day on which it is delivered. Charged.

2. If the jury believe from the evidence that the deed from Douthit to Dickson and the mortgage of S. C. Dickson to Douthit, dated November 2, 1885, were not, in fact, executed and delivered until January 14, 1886, the latter is the date from which the forty days within which the mortgage should be recorded must be reckoned. Charged.

3. If the mortgage of S. C. Dickson was, in fact, executed

on November 2, 1885, and was not recorded until January 14, 1886, a purchase from S. C. Dickson between November 2, 1885, and January 14, 1886, who claims under a deed executed within that period, but who has not recorded it until January 14, 1886, cannot prevail against the prior unrecorded mortgage, if the latter was recorded on January 14, 1886. Refused.

4. If the jury believe from the evidence that S. C. Dickson purchased the land in dispute at master's sale on November 2, 1885, but did not comply with his bid until January 14, 1886, at which time he received a deed and executed a mortgage to the master, he did not acquire the legal title until January 14, 1886, and that a deed to the said premises executed by him between the sale and the execution and delivery of title, cannot prevail against the purchaser under foreclosure of the purchase money mortgage executed to the said master, provided the mortgage was recorded within forty days from January 14, 1886. Charged.

5. That under the will of Peter C. Sudduth, his widow, Deborah J. Sudduth, took a fee simple estate in this land, and if the jury believe from the evidence that Deborah J. Sudduth was made a party to this suit within ten years from the accrual of Peter C. Sudduth's interest in the land, then the statute of limitations is no bar to the plaintiff's claim. Charged.

Now, as I said before, if you believe that Mr. Dickson got this deed in November, 1885, and sold to Sudduth between that time and January 14, if you believe that he executed a mortgage the same day, and that was not recorded, then the statute of limitations would commence to run, and if you believe that he and his heirs were in possession of that land adversely for ten years, in uninterrupted possession of it for ten years, then that would give defendants good title. But it all depends upon what took place in November, 1885. If Sudduth bought it and thought he was buying unincumbered property, and he had no actual or constructive notice of the mortgage, he would be entitled

to it, but if Dickson bid it off that day and got his deed that day, and gave his mortgage that day, then the plaintiff cannot recover.    Verdict and judgment for defendants.

From this judgment the plaintiff appeals on the following grounds:

I. Because the Circuit Judge erred in refusing to allow the appellant to prove the custom or habit of Judge Douthit, then master of Greenville County, of dating deeds and mortgages as of the date of the sale, even though the terms of the sale were not complied with for a month or months after the day of sale.

II. Because the Circuit Judge erred in restricting the proof in this case to what was done by Judge Douthit in the execution of the deed and mortgage of S. C. Dickson to him, the said S. J. Douthit, master.

III. Because the office of S. J. Douthit being a public office, and it being relevant to prove the existence of a course of business or habit of the said officer doing business in the said office, it is respectfully submitted that the Circuit Judge erred in refusing to allow the plaintiff below to prove what the habit or custom of Judge Douthit was in his said office, as to the execution of deeds and mortgages.

IV. Because the Circuit Judge erred in refusing to charge the jury as follows: "3. If the mortgage of S. C. Dickson was in fact executed on November 2, 1885, and was not recorded until January 14, 1896, a purchaser from S. C. Dickson between November 2, 1885, and January 14, 1886, who claims under a deed executed within that period, but who has not recorded it until after January 14, 1886, cannot prevail against the prior unrecorded mortgage, if the latter was recorded on January 14, 1886."

V. Because the Circuit Judge erred in charging the jury as follows: "The law applicable to this case is in a narrow compass, as I view it, and I charge you that in 1885, if S. C. Dickson bought that property, and got a deed for the property from the officers of the Court selling it, and that

he executed and delivered this mortgage which you have heard read, under which Miss Turpin claims, and that if it was not recorded in forty days after execution, and if the testimony satisfies you that Sudduth bought the property in the meantime and within the forty days, and that Dickson gave no notice of it, and made the deed to it to Sudduth, the plaintiff could not recover."

VI. Because the Circuit Judge erred in charging the jury as follows: "Now, it all depends upon the view you take of the case as to when Dickson got possession of the land by deed and when he sold it. If he got it in November and sold it between that and January, and Sudduth had no actual or constructive notice of the existence of this mortgage, I charge you as a matter of law, if the mortgage was given in November and was not recorded in forty days, then the plaintiff would not be entitled to recover."

VII. The undisputed testimony in this case being that the deeds, said to have been executed by S. C. Dickson to Peter C. Sudduth, were neither of them ever recorded in the register mesne conveyance office of Greenville County until 1895, and that the plaintiff had no actual knowledge of the existence of the same, the Circuit Judge, therefore, erred in charging the jury as follows, to wit: "If Sudduth bought it and thought he was buying unincumbered property, and he had no actual or constructive notice of the mortgage, he would be entitled to it; but if Dickson bid it off that day, and got his deed that day, and gave his mortgage that day, then the plaintiff cannot recover."

*Messrs. Wells, Ansel & Cothran,* for appellant, cite: *Testimony offered as to custom of master should have been admitted:* 68 Ill., 541; 119 U. S., 560. *As to priority of mortgage over deed on account of registry:* 36 S. C., 208; 43 S. C., 45; 23 S. C., 568; 27 S. C., 584; 20 S. C., 190; 23 S. C., 543; 26 S. C., 431; 165 U. S., 494; 115 U. S., 344.

*Mr. J. A. Mooney,* contra, cites: *Testimony as to custom of master properly excluded:* 10 Am. St. R., 669; 13 Id.,

776; 8 Id., 771; 14 Id., 254; 25 S. E. R., 170. *As to lien of mortgage:* 29 S. C., 149; 22 S. C., 32; 23 S. C., 490; 24 S. C., 285; 28 S. C., 58; 1 McC., 265; 19 S. C., 16; 23 S. C., 565; 50 S. C., 161; 2 Hill, 202.

Oct. 5, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This is an action to recover possession of real estate, and as it is conceded that both parties claim title under one S. C. Dickson, the controversy turns upon the inquiry which party has shown the better title from Dickson. It appears that the land in question was offered for sale, on sales day in November, 1885, by S. J. Douthit, as master for Greenville County, under proper proceedings for the partition of the estate of one Goodlett, and bid off by S. C. Dickson. The said Dickson executed his bond to Douthit as master, conditioned for the payment of $660 twelve months after date, with interest from date. Though it is not stated what was the amount of Dickson's bid, it would seem that this bond was given to secure the payment of the credit portion of the purchase money, for it is stated that the land was sold for one-half cash, balance on credit of twelve months; and he also gave a mortgage on the premises in question to secure the payment of said bond. Both this bond and mortgage bear date the 2d of November, 1885, and the mortgage was recorded on the 14th of January, 1886. This bond and mortgage were subsequently assigned to the plaintiff, and she commenced an action against S. C. Dickson on the 8th of February, 1895, for the foreclosure of the mortgage; and having recovered judgment, the mortgaged premises were offered for sale, at public outcry, on the 7th of May, 1895, by D. P. Verner, the then master for Greenville County, and bid off by the plaintiff for the sum of $300; and on the 8th of June, 1895, she received titles for the premises from the said master. The bond and mortgage and the deed above referred to were introduced in evidence by the plaintiff; and inasmuch as the mortgage appeared not to have been recorded

within forty days from its date, she undertook to show that
the mortgage did not bear its true date, but that, in fact, it
was not executed until the 14th of January, 1886—the day
on which it was recorded. For this purpose the account
book of Master Douthit, showing his settlement with the
estate of Goodlett, was introduced, on which it appeared
that Douthit charged himself with $250 cash received from
S. C. Dickson on the 11th of November, 1885; cash re-
ceived from Dickson on 24th of November, 1885, $453;
cash received from Dickson on the 14th of January, 1886,
$660; "two bonds of S. C. Dickson, and interest, $757.10;
on 13th of December, 1886; 16th of February, 1887, cash
received of S. C. Dickson, $70.45;" and on same day the
following entry, "to balance on bond of S. C. Dickson, as-
signed to E. F. S. Rowley, trustee, $650," who, it appears,
subsequently assigned the bond and mortgage to the plain-
tiff. The only credit indorsed on the bond of Dickson
above referred to, as introduced in evidence by the plaintiff
prior to its assignment, is that of $70.45, dated 16th Febru-
ary, 1887. The plaintiff also attempted to introduce evi-
dence as to what was the custom of Master Douthit as to
dating the papers when the conditions of sale were subse-
quently complied with; but this testimony, upon objection,
was ruled out, his Honor, Judge Watts, saying: "I don't
think he has a right to testify as to the general custom of
Judge Douthit—he can testify as to this particular case;"
the witness then answered: "I know nothing as to that cus-
tom in this particular case." One of the subscribing wit-
nesses to the mortgage, T. Q. Donaldson, Esq., was exam-
ined as a witness, who, after stating that he had probated
the mortgage, which probate bears date 14th of January,
1886, was asked: "Q. Do you know whether or not that
paper was delivered to (by?) Mr. Dickson at the date of the
probating? A. I have no recollection of it." He was then
asked this question: "Q. You knew what was Judge Dou-
thit's custom? A. Yes, sir; I have heard that he had a
custom about it, but I don't know. Q. As to this particu-

lar transaction, you don't remember about that?    A. No, sir; I do not know besides from the statement of the papers themselves."

Thus the plaintiff traced her title from S. C. Dickson, and rested.    The defendant then introduced testimony tending to show that some time in the early part of November, 1885, the said S. C. Dickson made a deed to Peter C. Sudduth, who was the husband of one of the defendants, and the father of the other defendants, for the premises in dispute; that under that deed Peter C. Sudduth went into possession of the premises in November, 1885, sowed the place in wheat in the fall of that year, and retained the possession until his death in 1888, ever since which time the defendants have been in possession, making improvements—"built houses and cleared land and built fences and improved it generally"—and that they never heard of any claim to the land by any other person until they saw it advertised for sale under the mortgage through which plaintiff claims; that the original deed having been destroyed by fire in November, 1885, the said S. C. Dickson, on the 23d day of August, 1888, made another deed to Peter C. Sudduth for the same premises, in which the following words occur: "This deed has been signed and delivered before, but believing that the former deed has been burned and destroyed, I now place this deed to take the place of said burnt deed."    The deed alleged to have been burnt was never recorded, and the new deed of August, 1888, given to replace the burnt deed, was not recorded until the 19th of April, 1895.    In this way the defendants undertook to trace their title from S. C. Dickson, and they also set up in their answer the plea of the statute of limitations, relying upon the adverse possession of their ancestor, Peter C. Sudduth, cast upon them by his decease.

In reply, the plaintiff offered Dr. Rowley as a witness, who testified that the bond and mortgage of Dickson to Master Douthit was transferred to him on the 16th of February, 1887, and that he transferred the same to the plain-

tiff on the 30th of April, 1887, and that he had no notice of any deed or anything of the kind from the time he bought the paper—"nothing but the bond and mortgage and assignment here;" that the plaintiff lived with him and he attended to all her business, and that he "knew nothing of that deed—not until the land was advertised for sale."

It appears from the "Case" that this action was not commenced until the 6th of January, 1897, as the summons bears that date; and although it may be inferred from a statement which appears in the argument of one of the counsel that the action had been originally commenced against two of the defendants and was afterwards amended by making the other defendants parties, yet there is nothing whatever in the "Case" to show anything of the kind; and, as we have repeatedly had occasion to say, we must look alone to the "Case" for the facts upon which an appeal is to be considered, and cannot accept facts appearing only in the argument of counsel, unless they are admitted on the record, or in open Court at the hearing, which does not appear here.

This appeal raises two general questions: 1st. As to the competency of certain testimony ruled out by the Circuit Judge. 2d. As to certain errors alleged to have been committed in the charge to the jury. For a full and fair understanding of the second question it will be necessary for the reporter to incorporate in his report of this case the charge of the Circuit Judge and the exceptions as set out in the record.

Our first inquiry is, whether there was error in ruling out the testimony as to the custom of Master Douthit in regard to dating conveyances, bonds, and mortgages executed by or to him, as master, in pursuance of judicial sales made by him. The avowed object of this testimony was to show that it was the custom of this master to date such papers on the day of sale, although they might, in fact, be executed afterwards; and the real purpose was to show that the mortgage under which the plaintiff claims,

though bearing on its face the date of 2d November, 1885, and so spread upon the public records, was, in fact, not executed until 14th of January, 1886—the object being to avoid the effect of failing to record the mortgage within forty days, as expressly required by statute.    While it is true that an instrument in writing is presumed to have been made or executed on the day of its date (1 Greenl. on Ev., sec. 38, note a), yet it is equally true that it is admissible to show by any competent evidence the true date of its execution, the burden of proof being on the party alleging a delivery on another day.    2 Greenl. on Ev., sec. 297; *Soloman* v. *Evans*, 3 McC., 274; *Pressly* v. *Hunter*, 1 Speer, 133; *McCracken* v. *Ansley*, 4 Strob., 1.    Accordingly, in this case, one of the subscribing witnesses to the mortgage, Mr. Donaldson, who had also probated the mortgage on the 14th of January, 1886, was allowed, without objection, to be asked whether the mortgage was delivered "at the date of that probating;" but, unfortunately for the plaintiff, he answered: "I have no recollection of it;" and when further interrogated upon the subject, his reply was: "No, sir, I do not know besides from the statements of the papers themselves."    So that, without any direct evidence tending to show that the mortgage was antedated, the plaintiff offered to show what was the custom of Master Douthit in dating papers, where the terms of sale were not complied with until some time after the sale.    In the first place, there was no evidence, other than that afforded by the dates of the bond and mortgage, offered in evidence by the plaintiff herself as to when Dickson complied with the terms of the sale—and those papers showed that he complied on the day of sale.    We suppose, however, that the account book of Master Douthit, likewise introduced by plaintiff, is relied upon to show that Dickson did not comply until after the day of sale.    That account book shows that Dickson made two payments to the master, aggregating in amount more than the cash payment required—one-half of the purchase money—one of which was made on the 11th and the other

on the 24th of November, 1885, and there is no pretense
that Dickson bought any other property, except the land
in dispute, at the sale of the Goodlett estate. So that, if
that account book shows anything, it would seem to show
that Dickson complied with the terms of the sale at least
as early as the 24th of November, 1885, and the mortgage
was not recorded within forty days from that date. As to
the other entries on that account, showing cash received by
the master from Dickson, the testimony affords no means
of explaining them, and we shall not resort to conjecture.
The burden of proof was on the plaintiff to show that Dick-
son did not comply with the terms of the sale until the 14th
of January, 1886, and did not either receive titles or give
his mortgage until that date, and, certainly, the entries in
the master's account book do not show those facts. But,
waiving all this, we are of opinion that while testimony as
to custom on the usage of trade is competent for certain
purposes, yet it is not competent for the purpose of proving
an independent fact. As is said in 2 Greenl. on Ev., sec.
251: "Their true office (speaking of customs or usages of
trade) is to interpret the otherwise indeterminate intentions
of parties, and to ascertain the nature and extent of their
contracts, arising not from express stipulation, but from
mere implications and presumptions and acts of a doubtful
and equivocal character; and to fix and explain the mean-
ing of words and expressions of doubtful or various senses."
No case has been cited, and our investigations warrant us
in saying that none can be found, in which such testimony
has been held competent to prove a distinct and independ-
ent fact, not pertinent to explain any ambiguity in an in-
strument of writing, or to interpret the meaning of terms
found therein, and thereby to show what was the intention
of the parties. So, also, in *Fairly* v. *Wappoo Mills*, 44 S.
C., 227, where the cases upon the subject were reviewed, it
was said: "It seems to us that the very decided weight of
authority is in favor of the proposition that evidence of
custom and usage is not admissible to explain or vary the

terms of an express contract, whether written or verbal, unambiguous in its terms, unless it be to show the meaning of certain terms used in such contracts which, by well established custom or long usage, have acquired a meaning different from that which they primarily bear; for the reason that when parties, in making a contract, use terms which, by usage or custom, have acquired a certain meaning, they must, in the absence of any evidence to the contrary, be assumed to have used such terms in such acquired sense." It is obvious, under these well settled principles, that the testimony in question was not competent. In the first place, there was no ambiguity in the terms of the mortgage, and the testimony did not tend to show that any of the terms or expressions used in the mortgage had, by custom or long usage, acquired a sense different from that which they primarily bear. On the contrary, the sole object of the testimony was to show a distinct and independent fact, wholly unconnected with the intentions of the parties, upon which it could not possibly throw any light. We do do not think, therefore, that there was any error in ruling out the testimony in question, and the exceptions raising this question must be overruled.

The other exceptions may, as stated by counsel for appellant in their argument, be considered together. The real question is presented by appellant's fourth exception, which imputes error to the Circuit Judge in refusing to charge plaintiff's third request, which was as follows: "If the mortgage of S. C. Dickson was, in fact, executed on November 2, 1885, and was not recorded until January 14, 1886, a purchaser from S. C. Dickson between November 2, 1885, and January 14th, 1886, who claims under a deed executed within that period, but who has not recorded it until January 14, 1886, cannot prevail against the prior unrecorded mortgage, if the latter was recorded on January 14, 1886." It will be observed that the plaintiff, in stating this request to charge, in her fourth exception, has inserted the word "after" between the words

"until" and "January," in the third line from the last line in the exception, whereas no such word there appears in the request to charge as set out in the "Case." If the request to charge was as set out *in the "Case"* (as we must assume it to have been), and not as it is set out *in the exception*, then a different question is presented from that which has been argued by counsel for appellant. For the question, as presented by the request to charge, as set out in the "Case," would be whether a mortgage executed on the 2d of November, 1885, but not recorded until the 14th of January, 1886, after the expiration of the forty days allowed for that purpose, would take precedence of a deed, executed between the 2d of November, 1885, and the 14th of January, 1886, but at what date between those two dates not stated, and not recorded "until" the 14th of January, 1886; and to that question there could be no other answer than that the mortgage would not take precedence of the deed, for the obvious reason that the request assumed that the mortgage was not recorded until after the expiration of the forty days, while it did not assume that the deed was recorded after the expiration of the forty days; and, hence, there would be no error in refusing the request. If, however, the request could be assumed to be as stated in the exception, then the question would be whether a mortgage executed on the 2d of November, 1885, but not recorded until the 14th of January, 1886, after the expiration of the forty days, would take precedence of a deed executed after the 2d of November, 1885, but exactly when not stated, and not recorded until *"after"* the 14th of January, 1886, exactly when not stated; and to this question the answer must be that the mortgage would not take precedence of the deed, for the reason that while the request assumed that the mortgage was recorded "out of time," it did not assume that the deed was recorded "out of time," as the date of its execution, as well as the date of its recording, did not appear; and hence there would be no error in refusing the request as thus presented. But waiving this, which may

possibly be regarded as hypercritical by some, though we must say that parties who rest their appeal upon the refusal of a Circuit Judge to charge certain requests, should be very careful to so frame their requests as to present clearly and distinctly the propositions of law which they wish laid before the jury, eliminating all erroneous or indefinite propositions, so that the Circuit Judge may be able to see clearly what legal propositions, applicable to the case as made by the testimony, the party desires to have laid before the jury. Still we will not decline to take the most liberal view of the proposition which we presume the appellant desired to have submitted to the jury. That proposition, as we suppose, was this: that if the jury believe that the mortgage of Dickson was, in fact, executed on the 2d of November, 1885, but was not recorded until the 14th of January, 1886, a purchaser from Dickson, claiming under a deed executed between the 2d of November, 1885, and the 14th of January, 1886, but not recorded until after the 14th of January, 1886, *and after the forty days allowed for that purpose had expired*, could not prevail against the prior mortgage, which, though not recorded within the time prescribed by statute, was recorded before the deed to such purchaser was recorded. So that the question presented by the request as thus framed is, whether a purchaser without notice of a prior unrecorded mortgage, claiming under a deed executed after the mortgage but before it was recorded, the same not having been recorded within the time prescribed by statute, such deed not having been recorded within forty days, and not until after the mortgage was recorded, can prevail against the mortgage. This question must be determined by the provisions of the act of 1876, now incorporated in the Rev. Stat. of 1893, as section 1968, applying to all deeds, mortgages, and other instruments of writing therein mentioned, executed after the 1st day of January, 1877, and is not to be affected by the act of 1898, 22 Stat., 746, making material amendments to that section. Several cases have been cited by counsel for appellant as construing this

section, the most notable of which is *King* v. *Fraser*, 23 S. C., 543, which may be regarded as the leading case upon the subject. The case of *McNamee* v. *Huckabee*, 20 S. C., 190, which is also cited, has no application to this case, as the question there arose under the registry law as it stood prior to the passage of the act of 1876, now incorporated in the Rev. Stat. of 1893, as section 1968, whereby fundamental changes were made in the registry law. In the case of *King* v. *Fraser*, *supra*, the question was whether a mortgagee, whose mortgage had not been recorded within the prescribed time but was afterwards recorded, took precedence of the general unsecured creditors of the mortgagor, and it was held that the mortgage had priority over all the unsecured creditors, including those whose debts were contracted between the date of the execution of the mortgage and the date of its record, but that it was otherwise as to creditors who had acquired a lien subsequent to the execution of the mortgage but prior to its record, as well as to purchasers without notice who had acquired title after the mortgage was executed, but before it was recorded. This is obvious from the following language used by Mr. Justice McGowan as the organ of the Court: "It is obvious that this postponement of the lien (until the mortgage is recorded) must seriously affect the rights of the mortgagee, especially in respect to liens which in the meantime may have been acquired by others. While the lien of a mortgage not recorded in time is in abeyance for the lack of registry, other creditors of the mortgagor may come in and acquire liens upon his property, which will take precedence over the mortgage, without regard to its date. This is not expressly declared, but results necessarily from the postponement of the lien of the mortgage and the general nature of liens, as to which time is the essential thing. So far, therefore, as there may be conflict between liens, there is no obscurity, for as to them it is only necessary to inquire which is the first in the order of time. We may also say in passing that if the property is actually purchased before the mortgage

is recorded, and without actual notice, the innocent pur-
chaser will undoubtedly take it unaffected by the dormant
lien of the unrecorded mortgage." Upon this point the
Court was unanimous (see page 576), though there was a
dissent upon another point. The same doctrine is recog-
nized by Mr. Justice Pope, in *Summers* v. *Brice*, 36 S. C.,
204, though it was very properly not applied in that case,
because there it appeared that the purchaser had actual
notice of the mortgage, and he could not claim to occupy
the position of purchaser for valuable consideration without
notice, for the further reason that he had not parted with
anything of value at the time of his purchase. Here,
however, there is no pretense of any actual notice, and the
evidence is that Sudduth, when he bought the land from
Dickson, did pay in cash the purchase money.

There is no exception referring distinctly to that portion
of the charge as to the effect of the possession of Sudduth
and of his heirs at law; but if any of the exceptions were
intended to question the correctness of that portion of the
charge, they could not be sustained, for the instruction to
the jury was that "if you believe that he [referring
to Peter C. Sudduth] and his heirs were in possession
of that land adversely for ten years, uninterrupted
possession of it for ten years, then that would give defend-
ants good title." This instruction, under the testimony in
the case, was clearly free from error. Sec. 107 of the Code;
*Burnett* v. *Crawford,* 50 S. C., 161, and the cases therein
cited. For there was testimony that Peter C. Sudduth
went into possession of the land immediately after he pur-
chased it from Dickson in November, 1885, sowed the land
in wheat that fall, and retained the possession until he died
in 1888, when he died leaving his wife and children, who
were his heirs at law, and who continued in possession,
making improvements on the land up to the time of the
trial. It is true that there was testimony that Peter C.
Sudduth made a will, but it does not appear to have been
offered in evidence, nor was there any testimony as to what

were the terms, or whether it embraced the land in dispute. All that does appear in the "Case" are the allegations in the answers that Peter C. Sudduth died in 1894, instead of 1888 (as the testimony shows), leaving a will, whereby he devised this tract of land to his wife, the defendant, Deborah Jane Sudduth, for life, with remainder to his children, the other defendants, and the further allegation that said Peter C. Sudduth "left surviving him at the time of his death his widow, the defendant, Deborah Jane Sudduth, and his children, the defendants, P. Carr Sudduth, Emma Sudduth, Marshie Sudduth, and Marion Sudduth, who are now his heirs at law and devisees, the owners in fee and in possession of the said tract of land;" but there is not a particle of testimony to sustain these allegations, so far as they relate to the terms of the will, or as to the property devised, or as to the persons named as devisees; for the copy of the will set out in the argument of one of the counsel cannot, under the well settled rule, be considered, especially as it is not *even there* stated that the will was offered in evidence. So that the charge was not only pertinent to the case as made by the testimony, but was free from error; for the instruction was, that if the jury believed that Peter C. Sudduth and *his heirs*—not his *devisees*—were in adverse possession for ten years, that would give them a good title. It would seem, however, from the terms of the fifth request to charge submitted by plaintiff, which was charged, that the terms of the will of Peter C. Sudduth were, in some way, not disclosed by the "Case," brought to the attention of the Circuit Judge; and it may be, for all that we know, that the verdict of the jury was based upon the instruction, and if so, the judgment must stand; for that portion of the charge, which presented a distinct and separate view of the case, was not excepted to; and the jury may have reached the conclusion that Deborah Jane Sudduth was *not* made a party to this suit within ten years from the accrual of Peter C. Sudduth's interest in the land; and if so, then the verdict was right. Indeed, from what appears in the "Case,"

which alone we are at liberty to consider, such would seem to be the inevitable conclusion; for, so far as the "Case" shows, this action was not commenced until the 6th of January, 1897, and there was testimony tending to show that Peter C. Sudduth acquired his interest as early as November, 1885—and this testimony is not contradicted; and if this be so, then it follows that Deborah Jane Sudduth was not made a party within ten years from the accrual of the right of Peter C. Sudduth.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

NOTE.—We desire to add in the form of this note, that we have felt no little difficulty and embarrassment in disposing of this case, arising entirely from the incomplete preparation of the "Case." If appellants omit to incorporate in the "Case" the facts necessary for the determination of the questions presented, they must take the consequences; for there is no rule better settled or more salutary, than that this Court will not consider any facts not appearing in the "Case," unless admitted in writing, signed by the counsel, or consented to at the hearing in open Court.

MR. JUSTICE POPE concurs in result.

NOTE.—Since the filing of this opinion, the Reporter has very properly and kindly called my attention to an inadvertent error into which I fell, in saying that the third request to charge, as stated in the fourth exception, differed from the request as set out in the "Case." While this error does not affect the result, inasmuch as the request to charge was considered in both aspects, and its refusal justified, whether the request was in the form stated in the exception or in the form stated in the charge of the Circuit Judge; yet, as I am very anxious to avoid any injustice to counsel, I have requested the Reporter to append this note to the "Case," as an acknowledgment of my inadvertent error. It resulted from taking the third request from the charge of the Cir-

cuit Judge, in which the word "after" was, no doubt, inadvertently omitted; whereas the request, as set out on page 26 of the "Case," conforms to the request as stated in the fourth exception. I, therefore, take pleasure in withdrawing my remarks as to this supposed difference between the request as stated in the exception and the request as set forth in the "Case," and as to the importance of framing exceptions in conformity with the facts stated in the "Case," as inapplicable in this instance.

MR. JUSTICE GARY *dissenting*. My view of this case is that it was immaterial whether the mortgage was executed on the 2d of November, 1885, or the 14th of January, 1886, and that the presiding Judge was, therefore, in error in his charge to the jury. The case contains the following statement of facts: "It is agreed that the judgment roll, No. 10,340, was an action for the sale of the real estate of James F. Goodlet, deceased; that the proceeding is regular; that the land in dispute in this case was sold by the master, S. J. Douthit, and bought by S. C. Dickson, who gave the bond and mortgage mentioned above for the credit portion; said land was sold in obedience to the decree of the Court on salesday in November, 1885, for one-half cash, balance on credit of twelve months." It is a principle of law too well settled to need the citation of authority for its support, that a judgment is conclusive not only as to the parties to the record but also as to their *privies*. The defendants, by the deed of conveyance mentioned in the case, succeeded to the rights of the parties to the action for partition, and thus became the *privies* of such parties, and bound by the said judgment. 2d Black on Judgments, sec. 549. The said judgment provided that the credit portion of the purchase money should be secured by a mortgage of the premises when sold. It was made the duty of the master to execute this provision; and even if he had violated his trust by failing to take the required security, the defendants could not have held the land against such claim, and the land could

have been subjected to the payment thereof. Under such circumstances they would have taken the land burdened with the obligation imposed by the judgment in partition. The master, however, took the required security, which was paramount to the rights of the defendants, who are merely *privies* under said judgment. The defendants could not claim that they were without notice of the judgment in partition, as it was constructive notice to them. The rule is thus stated in *Ellis* v. *Woods*, 9 Rich. Eq., 19: "The proceedings of all our courts are public. The records, as those of every public office, where records are kept, are open to the inspection of every citizen of the country, who has an interest or inclination to inquire or investigate. The keepers of such records are bound to produce and exhibit them on demand. When one purchases land from a defendant in execution, he cannot protect himself in the purchase, or set aside the *lien* of the judgment, on the plea that he had no notice of the enrollment of the judgment; or if he purchases a negro or other chattel, he cannot avoid the prior claim of the plaintiff in the execution, on the ground that he was not aware that such execution was lodged in the office of the sheriff. In these instances the purchaser has implied notice. I think that public policy requires that the doctrine should be broadly declared, that the records of all our courts should be implied notice in all cases, except where legislative acts have or shall modify or restrict the doctrine." This language is quoted with approval in the case of *Kaminsky* v. *Trantham*, 45 S. C., 393. For these reasons I dissent from the opinion of Mr. Chief Justice McIver.