[No. 34437. *En Banc.* January 22, 1958.]

THE STATE OF WASHINGTON, *on the Relation of John J. O'Connell, as Attorney General, Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

*Carlson, Newlands & Reha* and *C. John Newlands, Special Assistant Attorneys General,* for relator.

[1]Reported in 320 P. (2d) 1079.

*Elvin J. Vandeberg, Assistant Attorney General*, for respondent.

*Helsell, Paul, Fetterman, Todd & Hokanson, amicus curiae.*

HUNTER, J.—This is an original proceeding for a writ of mandamus instituted by the attorney general of the state of Washington, John J. O'Connell, as relator, petitioning this court to restrain permanently the state auditor from the further issuance of warrants to certain state officials for reimbursement of expenses, as prescribed by Laws of 1957, chapter 300, p. 1231, enacted by the thirty-fifth session of the legislature. He contends such an act grants an increase in compensation to a public official during his term of office and is in violation of the state constitution.

The last paragraph in § 2 of the above act, with which we are concerned, provides:

"For reimbursement in lieu of expenses incurred while serving as duly elected and qualified officials at the seat of the government for the Secretary of State, the State Treasurer, the State Auditor, the Attorney General, the Superintendent of Public Instruction, the Commissioner of Public Lands and the Insurance Commissioner, at the rate of $200.00 per month each to [be] distributed upon their respective vouchers therefor .................$33,600.00"

The constitutional provisions involved are as follows:

Art. II, § 25: "The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into, *nor shall the compensation of any public officer be increased* or diminished *during his term of office*." (Italics ours.)

Art. III, § 25: "No person except a citizen of the United States and a qualified elector of this state shall be eligible to hold any state office, . . . *The compensation for state officers shall not be increased* or diminished *during the term for which they shall have been elected.* . . ." (Italics ours.)

Art. XXVIII, amendment 20, § 1: "All elected state officials shall each severally receive such compensation as the

legislature may direct. *The compensation of any state officer shall not be increased* or diminished *during his term of office,* except that the legislature, at its thirty-first regular session, may increase or diminish the compensation of all state officers whose terms exist on the Thursday after the second Monday in January, 1949." (Italics ours.)

It is not contended by counsel for the relator or the respondent that the expenses allowed by the legislative enactment for these state officials are for other than their lodging and subsistence while in Olympia. The question then to be resolved is whether two hundred dollars per month is an increase in compensation, or is it a true reimbursable expense allowance. If it is the former, the statutory provision is unconstitutional; if it is the latter, the enactment is valid.

In *State ex rel. Todd v. Yelle,* 7 Wn. (2d) 443, 110 P. (2d) 162, we passed on this very question in the case of members of the legislature. We held that an allowance of five dollars per day for lodging and subsistence for members of the legislature, while in the performance of their duties at the seat of government and temporarily away from their homes in other parts of the state, was a true reimbursable expense and did not constitute an increase in compensation.

We assume that the members of the 1957 legislature were aware of the constitutional prohibition against increasing compensation of a public official during his term of office but intended to grant a reimbursable expense allowance to these elected state officials in the performance of their duties at the seat of government, as we said they could do for themselves in the *Todd* case.

Are these elected state officials, in the performance of duties at the seat of government, within the same category as members of the legislature while serving in Olympia, and thereby within the rule of the *Todd* case, *supra?* In that case, we said:

"Counsel says, however, that the expenses of which we have been speaking are distinguishable from those for which reimbursement is provided in chapter 4, Laws of 1941, in that they are allowed while the officer is away from his regular place of work, while those provided for in chapter 4 are allowed to the officer while living where the work is per-

formed. *But to us it seems that these expense provisions, so to speak, have a common denominator, and that is, that they are made to reimburse the officer for expenditures made necessary by the fact that he is called away from his home in the service of the state.* Most of the state officers, for whose expenses appropriations have been made throughout statehood, live permanently at Olympia. When they are compelled to spend a few days in Seattle, Spokane, or elsewhere, their house rent or the interest on the investment, if they own their homes, their fuel, light, water, and other maintenance charges, go on. It is for this reason that they are reimbursed with respect to lodging which they are compelled to pay for in some other town or locality.

"It is the same, except in isolated cases, with respect to the members of the legislature. *They do not break up or abandon their homes when they come to Olympia for a legislative session. The expenses there continue as usual.* We have no doubt but that many state officers are absent from Olympia and on expense account a great deal more than sixty days in each biennium, though the aggregate be made up of a day or two, or a week at a time. Can it make any difference that the legislator is away from his home for sixty consecutive days?

"In our opinion, the reimbursements provided for in chapter 4, Laws of 1941, do not increase the compensation of the members of the legislature, within the meaning of § 25, Art. II of the constitution." (Italics ours.)

■ In resolving the question before us, we are entitled to take judicial notice of facts that are of general notoriety and which appear in statutory enactments. See *Gottstein v. Lister*, 88 Wash. 462, 153 Pac. 595 (1915); *Centralia Labor Temple Ass'n v. O'Day*, 139 Wash. 331, 246 Pac. 930 (1926); *McFerran v. Heroux*, 44 Wn. (2d) 631, 269 P. (2d) 815 (1954); 31 C. J. S., Evidence, 525, §16; 20 Am. Jur., Evidence, 55, 57, 58, §§ 29, 32, 33; 9 Wigmore on Evidence (3d ed.), 551, 571, §§ 2572, 2580; Model Code of Evidence 320, Rule 802. In the case of legislators, we know that they are in Olympia approximately sixty days every two years, except for isolated additional periods in the event of special sessions. We know that they do not break up their homes and come to Olympia in performing their official duties at the seat of government. We know, in order to represent their

respective legislative districts, that they are required by law to be *residents* of their *districts*. We, therefore, properly concluded, in the *Todd* case, *supra,* that they were in Olympia and away from their usual abode only temporarily, in the performance of their duties.

■ In the case of elected state officials, with whom we are now concerned, we know they represent the entire state. In the case of the governor, secretary of state, state auditor, and treasurer, they are required to maintain their residences in Olympia, as provided in Art. III, § 24, of the state constitution.

In construing this provision of our constitution in respect to the location of state offices, we stated, in *State ex rel. Lemon v. Langlie,* 45 Wn. (2d) 82, 273 P. (2d) 464:

" 'The governor, secretary of state, treasurer, auditor, superintendent of public instruction, commissioner of public lands, and attorney general shall severally keep the public records, books, and papers relating to their respective offices *at the seat of government, at which place also the governor, secretary of state, treasurer, and auditor shall reside.'*

"Like all other sections of our state constitution, these provisions are mandatory, since the section contains no express declaration to the contrary (Art. I, § 29).

"We feel certain that it was the intention of the framers of our state constitution and of the people in adopting it to provide that the whole of the executive department of the state should be located and maintained at the seat of government.

"The framers of the constitution provided that all of the then known executive departments of the state should be located at the seat of government. . . .

"In view of the history of the seat of government controversy in this state, culminating as it did in the framing of Article III, § 24, and Article XIV, §§ 1 and 2, of the state constitution, *we hold that it was the evident intention of the framers of the constitution and the people who adopted it to require that all of the state executive offices be maintained at the seat of government.*" (Italics ours.)

■ We know all the state officials with whom we are concerned have their offices located in Olympia. We can conclude that, in all of these offices, necessity would demand that the official move to Olympia in order to perform his

duties during his four-year term, unless he would be able to drive to and from his home to work. In the latter case, he would be living at his regular residence and there would be no expense incurred for lodging and subsistence away from his home. In the former case, he would be living in Olympia during his full term of office, which would be his place of usual abode during that period. Such a state official is aware of these physical requirements of living in Olympia, unless he be a "commuter," when he aspires to the position, and must be held to intend to fulfill these requirements.

We must conclude that the elected state officials in question, living in Olympia, are not residing there temporarily, as in the case of members of the legislature, and cannot, therefore, come within the rule of the *Todd* case, *supra*.

■ The legislature has consistently recognized in its enactments that expenses for lodging and subsistence *incident to travel* and away from one's residence are a true reimbursable expense. We said in the *Todd* case, *supra*:

"That a legislative interpretation extending over a period in excess of half a century should have great weight with the court. The legislative interpretation of this state for more than half a century has been to the effect that the allowance to public officers of reimbursement for sums necessarily expended, *while away from their places of residence in the service of the state,* is constitutionally permissible." (Italics ours.)

However, such legislation is not a precedent for the granting of an expense allowance to an elected official for expenses incurred at the seat of government and not incident to travel away from his actual residence.

It is vigorously contended by respondent's counsel that the South Dakota case of *McCoy v. Handlin*, 35 S. D. 487, 153 N. W. 361, is authority for the allowance of expenses incurred while in the performance of duties at the seat of government. Since this case was cited in the *Todd* case, *supra*, we will consider it further as it applies to the question before us. The statute involved in that case was passed by the legislature of South Dakota in 1911, and provided:

" 'That whenever a judge of the Supreme Court whose

legal residence shall be at some place other than the state capital *shall have changed his place of actual residence to the capital,* there shall be paid to such judge in consideration of expenses incident to removal to the capital, the increased expenses of living at a place other than his legal residence, the *expenses of traveling to and from such legal residence* the fixed sum of fifty dollars for each month, payable upon the certified vouchers of such judge filed in the office of the state auditor.'" (Italics ours.)

The South Dakota court held that this did not constitute an increase in compensation. In 1921, this expense item was increased from fifty dollars to one hundred fifty dollars per month by the South Dakota legislature, and the reasoning of the *McCoy* case, *supra,* was adopted in *State ex rel. Payne v. Reeves,* 44 S. D. 568, 184 N. W. 993, by a *pro tem.* supreme court appointed by the governor from the state bar association.

The case differs from our present case, in that certain expenses detailed in the South Dakota statute were not provided for in the statute before us, such as traveling and moving, whereas expenses allowed in our statute were limited to those incurred at the seat of government. Neither was increased cost of living set forth in our statute, and, assuming this were ascertainable, it would still be in a different category from living costs incurred incident to travel. In any event, the latter item would be in conflict with our ruling in *State ex rel. Banker v. Clausen,* 142 Wash. 450, 253 Pac. 805, and *State ex rel. Mills v. Clausen,* 161 Wash. 700, 296 Pac. 1119.

It appears that the learned jurist in the *Todd* case, *supra,* experienced difficulty in finding the living expenses of state legislators reimbursable while in Olympia, without overruling the *Banker* and *Mills* cases. To adopt the theory of the South Dakota cases, *supra,* would be an extension of our holding in the *Todd* case, *supra,* by allowing reimbursement for increased living costs which are not incident to travel.

■ We must conclude that the provision of our statute in question, providing for an expense allowance for certain state officials at the seat of government, does not come

within the purview of a *true* reimbursable expense, as determined in the *Todd* case, *supra*, and as construed for more than half a century by the legislature of this state. The allowance provided therefor is increased compensation during the term of office of a public official, contrary to Art. II, §§ 25, 26, Art. III, § 25, Art. XXVIII, § 1, of the state constitution, and must, therefore, be held invalid.

The writ prayed for will be granted.

HILL, C. J., MALLERY, DONWORTH, WEAVER, ROSELLINI, OTT, and FOSTER, JJ., concur.

FINLEY, J. (dissenting)—Amendment 20, which in 1948 added Art. XXVIII to the constitution, authorizes the legislature to fix the compensation of legislators. However, at the time of the 1941 legislative session, there was a provision in our constitution that legislators would receive five dollars a day as compensation and ten cents per mile for travel. In 1941, it was common knowledge that five dollars per day would hardly meet the going rate for lodging in Olympia, and that this left little or nothing for subsistence. The legislature appropriated forty thousand dollars and provided that members would be paid therefrom as maintenance at a rate not to exceed five dollars per day for actual and necessary expenses expended for subsistence and lodging while absent from their usual places of residence in service to the state.

In a test case which developed (*State ex rel. Todd v. Yelle* (1941), 7 Wn. (2d) 443, 110 P. (2d) 162), the court specifically held

" . . . the reimbursements provided for in chapter 4, Laws of 1941, do not increase the compensation of the members of the legislature, within the meaning of § 25, Art. II of the constitution."

This clearly recognized a distinction between expenses and compensation as the latter word is used in the constitution.

It is true that in 1941, in making provision for maintenance or expenses of its members, the legislature used an accounting method which contemplated the keeping of pre-

cise and accurate expense records and reimbursement on an item-by-item, actually or specifically incurred expense basis. The opinion of the court in the *Todd* case, *supra*, referred to this method of accounting, or reimbursement for actually incurred expenses. The majority opinion in the instant case places, I think, too much significance upon this facet of the *Todd* case. Largely by emphasizing this facet of *Todd* through repetition of the phrase, "true reimbursable expense," the majority opinion concludes that only an accounting method which involves item-by-item listing of actually incurred expenses can escape constitutional repugnancy.

I simply cannot agree with this reasoning or with the result reached by the majority. While the phrase, "true reimbursable expense," aptly describes a particular facet of the *Todd* case, it does not appear therein. It is not to be found in the constitution, and, significantly, it is not found in the legislation involved in the instant case. It seems to me that the phrase amounts to nothing more or less than judicial hypothesis and construction, and that it should be considered and evaluated on this basis, as any potentially feasible but not irrevocably binding legal concept. In any event, the phrase, "true reimbursable expense," is itself not unequivocally decisive as to the question in the case at bar.

In connection with the foregoing, I believe it should be noted that it has become an accepted accounting practice, both in government and in other circles, to provide for lump-sum, maximum expense allowances. Such lump-sum expense allowances are based upon accounting experience or averages. The method is commonly referred to as *in lieu reimbursement*. It is the exact opposite of an item-by-item calculation of actually-incurred expenses, but this alone does not render it undesirable from an accounting standpoint, nor make it unlawful.

I think that in the *Todd* case the court referred to the method of item-by-item accounting of specifically-incurred expenses simply because that method was contemplated or used in the action taken by the legislature itself in the enactment before the court in the *Todd* case. I do not believe

that the principle of law decided in the *Todd* case is or should be restricted to the matter of constitutional approval only for the particular type of accounting method there involved.

In the instant case, in my opinion, the legislature, in providing two hundred dollars per month for the particular elected state officials, adopted the *in lieu reimbursement* method. The action of the legislature in the instant case constitutes a legislative finding of fact that the lump sum of two hundred dollars per month is a fair and satisfactory average as to expenses reimbursable to the particular elected state officials. The instant case is here for review on an agreed statement of facts. There is nothing in the agreed statement of facts to indicate that the legislative finding of fact involved in making the lump-sum allowance of two hundred dollars is in fact unreasonable or erroneous. The burden of upsetting a legislative finding of fact, I think, is upon the relator. This burden has not been met in the instant case.

As recently as the case of *State ex rel. O'Connell v. Meyers* (1957), *ante* p. 454, 319 P. (2d) 828, this court stated:

"The authority and duty to ascertain facts which control legislative action are upon those to whom was given the power to legislate. Courts will not inquire into a legislative factual determination, beyond consideration of that which appears *upon the face of the act*, aided by judicial notice."

In *Scroggie v. Scarborough* (1931), 162 S. C. 218, 229, 160 S. E. 596, a case similar to the one at bar, the supreme court of South Carolina said:

"However, in the view we take of the instant case, it may be decided upon the assumption that only official expenses are properly allowable under the provisions of our Constitution, as we find nothing in the record which would justify us in deciding as a matter of fact that the expenses for which members of the General Assembly are to be reimbursed by the appropriation in question are other than official expenses. For the Legislature, a co-ordinate branch of the government, this Court has the highest respect, and there is a presumption that the appropriation was made for a proper purpose within the provisions of the Constitution; the bur-

den, therefore, was upon the petitioner to show, by any proper means, that the expenses to be covered by the appropriation were personal and not allowable under such provisions. In this he has failed. There is nothing before the Court to show the nature of these expenses, except the statement in the argument of petitioner's counsel to the effect that the appropriation was to defray personal expenses, and it is well settled that such statements cannot be considered; the facts must be shown by the record itself. See *State v. Wilder*, 13 S. C., 344; *Turpin v. Sudduth*, 53 S. C., 295, 31 S. E., 245, 306; *Whetstone v. Livingston*, 54 S. C., 539, 32 S. E., 561; *Burkhim v. Pinkhussohn*, 58 S. C., 469, 36 S. E., 908. Furthermore, when the length of the legislative term is taken into consideration, the amount of the appropriation is not so great as to indicate on its face that it was made for other than official expenses."

In the *Todd* case, *supra*, this court recognized the cogency of the reasoning of the South Dakota court in a similar case, *McCoy v. Handlin* (1915), 35 S. D. 487, 153 N. W. 361. The majority attempts to distinguish the *McCoy* case by stating that the South Dakota statute detailed certain expenses and mentioned the difference in cost of living. What has happened to the presumption of constitutionality? Why must the legislature detail that which is implicit in the use of the term *"expense?"* The majority also mentions, as a distinguishing factor between the South Dakota statute and the one before us, that the latter one is limited to expenses incurred at the seat of government. I do not so read the statute. The language in § 2, chapter 300, Laws of 1957, p. 1202, is " . . . *while serving* as duly elected and qualified officials at the seat of government . . . " (Italics mine.) I believe this language is broad enough to cover among other expenses those incurred by a state official in moving to and establishing residence at the seat of state government, and in re-establishing residence elsewhere upon termination of service. It is well known that the incumbents of several elective state offices, after the 1956 general election, transferred their residences elsewhere than Olympia, for business or other perfectly proper personal reasons. But there are no facts before the court indicative of moving or

other expenses or an absence thereof, and it is not proper to speculate upon these aspects of the case.

I think the majority opinion goes to some length to distinguish the *Todd* case, *supra*. I readily concede that there is some difference between legislators and elected state officials in terms of governmental function and, possibly, in terms of general *modus operandi*. But to me, such differences are a matter of degree and are somewhat minor in terms of distinguishing the *Todd* case. The majority (referring to the officials involved in the instant case) say that

"Such a state official is aware of these physical requirements of living in Olympia, unless he be a 'commuter,' when he aspires to the position, and must be held to intend to fulfill these requirements."

I fail to see how this distinguishes the particular elected state officials from the members of the legislature who were concerned in the *Todd* case, *supra*. Any one aspiring to the legislature also is aware of the physical requirements of being in Olympia for the legislative session and must be held to intend to fulfill those requirements. This reasoning did not carry the court in the *Todd* case. It is dubious that such reasoning would grow stronger and more persuasive simply through the passage of sixteen years.

For the reasons indicated, I do not agree with the limited and restrictive interpretation which the majority in the instant case places upon the *Todd* case, *supra*. Until such time as a majority of the court overrule the *Todd* case, it is controlling. The writ of mandamus in the instant case should not be issued.