[No. 943-1.   Division One—Panel 1.   July 10, 1972.]

JOHN M. GAAR, *Appellant*, v. KING COUNTY *et al.*,
*Respondents*.

*Thomas C. McCarthy*, for appellant.

*Christopher T. Bayley, Prosecuting Attorney*, and *Michael L. Cohen, Deputy*, for respondents.

WILLIAMS, J.—This action was brought by John M. Gaar for the purpose of compelling King County to rescind his suspension from employment and to pay his salary and benefits for the period of that suspension. His appeal is from an order denying his application for a writ of mandamus.

No statement of facts has been filed. The trial court's findings, which Gaar accepts as true, are, in substance, as

follows: Gaar was a career service employee of King County and an elected Democratic precinct committeeman. He solicited contributions to the King County Democratic Central Committee from several employees of King County. One of the solicitations took place in a county office during working hours. For this activity Gaar was suspended without pay for 47 days, thereby losing $2,012.70 in salary and retirement benefits. He appealed to the King County Personnel Board, which declined to hear him because the suspension was for less than 60 days.

The pertinent portions of the King County Charter (1968) are:

Section 560. *Political Activities.*

. . . [A]ll members of the career service shall not engage in any political activity on behalf of, and shall not pay or be asked to pay any assessment or contribution which will benefit directly or indirectly, anyone occupying or seeking appointment, nomination or election to any elective county office. A member of the career service may be elected and serve as a precinct committeeman without violating the provisions of this section.

and

Section 540. *The Personnel Board*

. . .

Any member of the career service may appeal to the personnel board: from any action pertaining to the methods of examination, appointment or promotion; from any suspension for more than sixty days, reduction in rank or pay, or removal; and from any classification or reclassification of positions.

Gaar contends his political actions did not violate the charter, he did not receive a fair hearing, there was no authority for his suspension, and the personnel board did have jurisdiction to hear his appeal.

■ The prohibition in the charter against political activity on behalf of elective county officials is clear enough. It has long been recognized that the functioning of government is impaired by practices which make selection and retention of employees a matter of favor rather than merit. As was said in *Ex parte Curtis*, 106 U.S. 371, 27 L. Ed. 232,

1 S. Ct. 381 (1882), which dealt with a similar regulation at page 373:

> The evident purpose of Congress in all this class of enactments has been to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service. . . .
>
> A feeling of independence under the law conduces to faithful public service, and nothing tends more to take away this feeling than a dread of dismissal. . . . [I]t is easy to see that what begins as a request may end as a demand, and that a failure to meet the demand may be treated by those having the power of removal as a breach of some supposed duty, . . .
>
> . . . [A] refusal may lead to putting good men out of the service, liberal payments may be made the ground for keeping poor ones in.

■ Gaar contends that support of the central committee of one of the main political parties when there is no election in the offing is too remote, that the money which he solicited and paid in will not find its way to benefit candidates for county office. On the authority of *State ex rel. O'Connell v. Yelle*, 51 Wn.2d 594, 320 P.2d 1079 (1958), we face the realities of political life and believe otherwise. Financial support of a political party which regularly fields candidates in county elections is within the prohibition of the charter.

■ In his next contention Gaar claims that he did not receive a fair hearing before his suspension. In the absence of some type of tenure rights established by law, a public employee may be hired and fired without notice, statement of cause, or hearing. The controlling authority for this proposition is *Yantsin v. Aberdeen*, 54 Wn.2d 787, 345 P.2d 178 (1959), wherein the court said at page 788:

> Due process of law is not applicable unless one is being deprived of something to which he has a right. . . .
>
> A police officer has no property right in public employment . . .
>
> . . .
>
> This is not to say that a police officer does not have

rights under civil service that will be protected, but they are only the rights given to him by the legislation creating the civil service system under which he is employed.

Gaar's next contention is that because no personnel rules had been promulgated by ordinance as required by the county charter, there was no authority to suspend him. For this to be a significant point, Gaar must show that he was prejudiced by the absence of an ordinance setting forth personnel rules. *Vancouver v. Jarvis,* 76 Wn.2d 110, 455 P.2d 591 (1969). He has not done so.

Gaar's last contention is that the personnel board had jurisdiction to hear his appeal. Section 540 of the county charter authorizes such appeal only if the suspension is for more than 60 days, which it was not.

Affirmed.

Horowitz, C.J., and Callow, J., concur.

Petition for rehearing denied September 25, 1972.

Review denied by Supreme Court November 8, 1972.