## LANCIONE v. THE STATE OF OHIO.

*Intoxicating liquors—Possession in bona fide private residence
—Grape juice during natural fermentation for vinegar,
lawful—But possession for beverage purposes, unlawful—
Fermentation for beverage purposes constitutes manufac-
ture—Character of bona fide private residence changed,
when—Sections 6212-15, 6212-17, and 6212-27, General Code.*

1. The possession of pure grape juice in a *bona fide* private
residence during the period of fermentation by natural
process, although it may contain one-half of one per cent.
or more of alcoholic content by volume, for the sole pur-
pose of producing vinegar, is not unlawful.
2. The possession of pure grape juice in a *bona fide* private
residence during or after the period of fermentation by
natural process, containing one-half of one per cent. or
more of alcoholic content by volume, used or intended
to be used for beverage purpose, is unlawful.
3. Such intended fermentation for beverage purpose, with
such excess of alcoholic content, is a manufacturing, and
an otherwise *bona fide* private residence ceases to be such
by provisions of Section 6212-27, General Code (109 O.
L., 6).
4. Section 6212-17, General Code (110 O. L., 49), does not pro-
vide an exception for such possession from the provisions
of Section 6212-15, General Code (110 O. L., 49).

(Decided December 15, 1923.)

ERROR: Court of Appeals for Belmont county.

*Mr. C. C. Sedgwick* and *Mr. W. J. Walker*, for
plaintiff in error.
*Mr. D. Allen Bond* and *Mr. H. W. Mitchell*,
prosecuting attorney, for state of Ohio.

ROBERTS, J. This is an error proceeding in
which a reversal is sought of the judgment of the

Court of Common Pleas affirming the conviction of the plaintiff in error in the mayor's court of the village of St. Clairsville.

The plaintiff in error was tried and convicted in the mayor's court upon a charge of having been on the 5th day of April, 1923, unlawfully possessed of intoxicating liquors.

A search of the premises of the plaintiff in error had resulted in the discovery of six barrels of wine, the ownership of which he admitted. It was conceded that the wine was intoxicating and that it was made and kept to be used as a beverage. Testimony was given in behalf of the plaintiff in error that the barrels were kept in such manner as to preserve the wine for such purpose, and no claim was made of any intention of making vinegar. The plaintiff in error offered testimony tending to prove that the wine was pressed from grapes in the fall of 1917, previous to the federal and state prohibition constitutional amendments, when it was not unlawful to so do; and, further, that the wine was kept and found in a *bona fide* private residence.

It is not a present purpose to discuss the evidence upon these propositions, and it is sufficient to say regarding them that they were found by this court to be not true.

It was contended by counsel for plaintiff in error that this wine was made by pressing the juice from grapes, which was then placed in barrels and by natural process became wine, and that such being the fact it was lawful for him to possess it as such and for him and his family to use it as a beverage. There is evidence tending to prove that its consumption was not restricted to family use,

but it is our intention to consider the proposition as claimed.

The proposition for consideration and determination may be stated as follows: Is it unlawful for a person to possess in his *bona fide* private residence wine containing one-half of one per cent. or more of alcoholic content by volume, used by him and his family as a beverage, or intended for such use, made from pure juice of grapes, obtained by extraction therefrom, after the federal and state legislation became effective?

Analogous to this is the similar proposition of pure juice of apples, treated in like manner, with same intention and use, and with as great an alcoholic content.

The Eighteenth Amendment to the federal Constitution reads as follows:

Sec. 1. "After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited."

Sec. 2. "The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation."

The amendment to the Ohio Constitution, Section 9, Article XV, reads as follows:

"The sale and manufacture for sale of intoxicating liquors as a beverage are hereby prohibited. The General Assembly shall enact laws to make this provision effective. Nothing herein contained shall prevent the manufacture or sale of

such liquors for medicinal, industrial, scientific, sacramental, or other non-beverage purposes.''

The federal law, the 'Volstead Act, reads in part:

''An Act To prohibit intoxicating beverages * * *

'' [Name of Act.] That the short title of this Act shall be the 'National Prohibition Act.' * * *

"Title II. Sec. 3. [Application of the Act to Eighteenth Amendment of the Constitution—Liquor for non-beverage purposes—Wine for sacramental purposes—Wine house receipts.] No person shall on or after the date when the eighteenth amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquors except as authorized in this Act, and all the provisions of this Act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented.''

The Crabbe Act, Section 6212-13, General Code, reads:

''This act shall be deemed to be an exercise of power granted in Article XV, Section 9, of the Constitution of Ohio and the police power of the state and its provisions shall be liberally construed to carry out the provisions of this act.''

Section 6212-14:

''In the interpretation of this act (1) the word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto any distilled, spirituous, malt, vinous. or fermented liquor and also any liquid or com-

pound whether or not same is medicated, proprietary, or patented, and by whatever name called, containing one-half of one per cent. or more of alcohol by volume which is fit for use for beverage purposes: Provided, that the foregoing definition shall not extend to de-alcoholized wine, nor to any beverage or liquid produced by the process by which beer, ale, porter, or wine is produced, if it contains less than one-half of one per centum of alcohol by volume, and is made as prescribed in Section 37, Title II of the Act of Congress known as the 'National Prohibition Act' passed October 28, 1919.

"2. The term 'given away' and the term 'possess' shall not apply to intoxicating liquor in a *bona fide* private dwelling."

Section 6212-27, General Code (109 O. L., 6), in part, provides:

"No place shall be regarded as a *bona fide* private residence under the laws prohibiting the liquor traffic, wherein liquors are possessed which have been illegally manufactured or obtained."

Section 6212-15 (109 O. L., 49) further provides:

"No person shall, after the passage of this act (G. C., Secs. 6212-13 to 6212-20), manufacture, sell, barter, transport, import, export, deliver, furnish, receive, give away, prescribe, possess, solicit or advertise any intoxicating liquors, or solicit or receive, or knowingly permit his employees to solicit or receive, from any persons any order for intoxicating liquor, or give any information of how intoxicating liquor may be obtained, except as authorized in this act. Liquor, and liquor preparations and compounds for non-beverage purposes, and wine for sacramental purposes, may

be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished, received, given away, possessed, prescribed, solicited, advertised, and orders may be solicited and received for the same, but only in accordance with the provisions of Title II of the act of Congress known as the 'National Prohibition Act,' passed October 28, 1919.''

Excluding extraneous matter, this section is found to pertinently declare: No person shall * * * manufacture * * * possess * * * any intoxicating liquors * * * except as authorized in this act.

It is further found that the only exception in this section refers to liquors for non-beverage purposes and wine for sacramental purposes.

Section 6212-17 (109 O. L., 49), after providing penalties for violations of the act, reads as follows:

''The penalties provided in this act shall not apply to a person for manufacturing vinegar, or non-intoxicating cider and fruit juices exclusively for use in his home, but such cider and fruit juices shall not be sold or delivered after they become intoxicating except to persons having permits from the United States government to manufacture vinegar and said penalties shall not apply to any such sale. No fine or part thereof imposed hereunder shall be remitted nor shall any sentence imposed hereunder be suspended in whole or in part thereof.''

Upon the part of Section 6212-17 last quoted is based the contention that cider and fruit juices may be lawfully possessed and used for beverage purposes after becoming intoxicating by natural

process of fermentation. Dispute having arisen upon this proposition it is important to determine how these statutory provisions should be properly construed. As authority for the manner of construction of penal statutes and what may be taken into consideration, quotation is made from *Inglis* v. *Pontius, Supt. of Banks,* 102 Ohio St., 140, at page 148:

"Penal statutes, or those which restrain the exercise, regulate the conduct, or impose restrictions upon any lawful trade, occupation or business, should be strictly construed, and their scope should not be extended to include limitations not clearly expressed in their terms. Neither should a statute defining an offense be extended by construction to persons not included within its descriptive terms. In all other respects the general rules of construction applicable to remedial statutes have equal application to penal statutes; that is to say, they are to be fairly construed according to the expressed legislative intent without resort to verbal niceties or technicalities. There should not be any forced construction to exclude from their operation persons who are plainly within their terms; statutes designed to prevent fraud should be so construed as to prevent the evil aimed at. Strict construction does not override the requirement that words are to be given their usual and ordinary meaning and that the purpose and intention of the lawmaker should be carried into effect. It is an aid in ascertaining the legislative intent to consider the existing evil which it is intended to remedy."

It is thus learned that construction may be fairly made according to expressed legislative in-

tent and that the purpose and intention of the lawmaker should be carried into effect.

"The object and purpose of all our laws governing the subject of intoxicating liquors is to promote temperance and prevent drunkenness * * * The evil to be remedied is the use of intoxicating liquors as a beverage." *Southern Express Co.* v. *Whittle,* 194 Ala., 406, 69 So., 652.

"The entire scheme of prohibition, as embodied in the constitution and laws of Kansas, might fail, if the right of each citizen to manufacture intoxicating liquors for his own use as a beverage were recognized." *Mugler* v. *Kansas,* 123 U. S., 623, 662.

There can be no doubt that the purpose and intent of these constitutional amendments and prohibition laws were to do away with the evils of intemperance and the use of intoxicants. Simply legislating against the sale and transfer of intoxicating liquor does not go to the root of the evil, eradication of which must lie in preventing the making and use thereof. It seems clear that the purpose of this legislation was to prevent the use of intoxicating liquor as a beverage, and, giving heed to the purpose of the enactments, the laws quoted must be so construed. Further, this is the expressed legislative intent.

As before stated, Section 6212-15 expressly prohibits the manufacture and possession of intoxicating liquor, hence the manufacture of all intoxicating liquor is unlawful unless authority therefor may be elsewhere found in the act. This section excepts only sacramental wine and liquor for non-beverage purposes. It is not claimed that such exception exists unless it be in that part of

Section 6212-17 above quoted. This section says that the penalties shall not apply to the manufacture of vinegar or non-intoxicating fruit juices, exclusively for use in the maker's home.

The wine under consideration was not vinegar, nor intended to be such. Neither was it non-intoxicating fruit juice. It was wine, and, as such, expressly prohibited. It was intoxicating liquor by reason of its alcoholic content. By reason of its fermentation and acquisition of alcohol it had, in fact, ceased to be fruit juice and had become, and should be so denominated, wine and intoxicating liquor. There is nothing in this section exempting from its penalties the use of cider or fruit juice after they have acquired the prohibited alcoholic content. They were primarily in the section and have not been taken out. It is further provided that such cider and fruit juices shall not be sold or delivered after they have become intoxicating, except to a person having a permit from the United States government to manufacture vinegar.

The Volstead act provides for the issuing of permits for such purpose. This law and the Volstead Act recognize the right to make vinegar, which is a preservative and condiment in general household use. It is ordinarily made from apple or grape juice by natural process of fermentation. It is well known that in the change of apple and grape juice from a bland liquid to vinegar, by fermentation, it will ordinarily possess for a time alcohol in excess of one-half of one per cent. Where the intention is to make vinegar, and not a beverage, the law does not make its possession wrongful when in such transition it contains an ex-

cessive amount of alcohol, and it may then or afterwards be sold as vinegar, as provided in the Crabbe and Volstead Acts. The only exception in this regard from the operation of the statute is the juice of apples or grapes when non-intoxicating, as defined, or when in the intended transition into vinegar, or after becoming such. The manufacture and possession of liquid, made by the transformation of fruit juices, by fermentation, into intoxicating liquor for beverage purposes, is within and not exempt from the provisions of the law. This conclusion is reached by construing the language of the law and by determination of its intended purpose. The intended creation of wine and intoxicating liquor by such manner of possession as to cause or permit fermentation, although by natural process, is a manufacturing. After this occurs, the dwelling thereby ceases to be a *bona fide* dwelling, as contemplated by the law. *State* v. *Sabo*, 108 Ohio St., 200.

"Should he put up some kind of fruit juice with the intent of having it so ferment and become intoxicating liquor, or should knowingly keep it after it had so become such intoxicating liquor, we think it could hardly be contended with any show of reason that he had not violated the plain provisions of the statute." *State* v. *Fabbri*, 98 Wash., 207, 167 Pac., 133.

It would be strange, indeed, with an intended purpose to prohibit the evils of intemperance and to prevent the possession and use of intoxicants, if the lawmakers should have excluded from the operation of the law two such great sources of intoxicating liquor, namely, apples and grapes, and the juice thereof, which can be so cheaply and

quickly transferred into intoxicating liquor, thereby permitting a situation which would make the law largely nugatory. Such an interpretation is inconsistent and unreasonable. It would be as absurd as it would be to follow the penal provisions regulating the use of motor vehicles as to lights, speed and otherwise, with a declaration that the foregoing provisions should not apply to motor vehicles having only four cylinders.

Another proposition involved is whether it is within the power of congressional or state legislation to prohibit or punish the possession of intoxicating liquor to be used as a beverage under conditions involved as herein stated.

"Sections 6212-15 and 6212-16, General Code, are not in contravention of the Eighteenth Amendment of the United States Constitution, nor of Section 9 of Article XV of the Constitution of the State of Ohio." *Krusoczky* v. *State,* 108 Ohio St., 430.

"As the State has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. * * * And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose.

"We further think it clearly follows from our numerous decisions upholding prohibition legislation that the right to hold intoxicating liquors for personal use is not one of those fundamental privileges of a citizen of the United States which no

State may abridge. A contrary view would be incompatible with the undoubted power to prevent manufacture, gift, sale, purchase or transportation of such articles—the only feasible ways of getting them. An assured right of possession would necessarily imply some adequate method to obtain not subject to destruction at the will of the State." *Crane* v. *Campbell, Sheriff*, 245 U. S., 304, 307.

"It is also well established that, when a State exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective." *Purity Extract & Tonic Co.* v. *Lynch*, 226 U. S., 192, 201.

"In effect the second section of the Eighteenth Amendment put an end to restrictions upon the State's power arising out of the Federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits. To be sure, the first section of the Amendment took from the States all power to authorize acts falling within its prohibition, but it did not cut down or displace prior state laws not inconsistent with it." *United States* v. *Lanza*, 260 U. S., 377, 381.

Doubt is not entertained of the power to legislate as herein quoted and construed. The conclusion is reached that the line of demarcation between lawful and unlawful possession of wine which is intoxicating, under the conditions herein involved, is the fact to be determined whether it is possessed for the making of vinegar or for the purpose of being used as a beverage. It is also conceivable that in the possession of pure fruit

juices an unintended and unknown fermentation may have occurred which would present a condition peculiar to such situation. No such proposition is involved in the instant case. The fact of possession of intoxicating liquor having been established, the burden of proving that the possession was lawful is upon the defendant. *Ignath* v. *State*, 32 O. C. A., 433.

*Judgment affirmed.*

POLLOCK and FARR, JJ., concur.