[No. 9606.  Department Two.  February 28, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v.
SHERMAN BAILEY, *Appellant.*[1]

INTOXICATING LIQUORS—SELLING OR GIVING AWAY—OFFENSES—IN-
FORMATION—SUFFICIENCY.  In Rem. & Bal. Code, § 6288, providing
that the selling or giving away of spirituous or vinous liquor of
any kind, or any essence, extract, compound, or any article whatso-
ever which produces intoxication, the words "which produces intox-
ication" refers only to the antecedent essences, compounds, etc.; and
an information for giving away "spirituous" liquors need not al-
lege that it "produces intoxication," as all spirituous liquors are
intoxicating.

SAME—EVIDENCE—PURPOSE OF PURCHASE—IMPEACHMENT OF WIT-
NESSES.  Upon a prosecution for giving liquor to an Indian, the de-
fendant's statement that he bought the alcohol for medicinal use in
treating rheumatism, may be impeached by testimony that he made
the purchase for "mechanical purposes," where his purpose in mak-
ing the purchase had a direct bearing upon his intent in giving it to
the Indian and whether for use or for carriage as claimed by de-
fendant.

SAME—GIVING LIQUOR TO INDIAN — EVIDENCE — SUFFICIENCY.  A
conviction of giving liquor to an Indian is sustained, where there
was evidence that defendant walked to a wagon with the Indian, con-
cealing a bottle of alcohol under his coat and handed it to the Indian
who put it in the front end of the wagon concealed in a gunny sack,
although the evidence was denied by the Indian and defendant; the
credibility of the witnesses being for the jury.

Appeal from a judgment of the superior court for Stevens
county, Carey, J., entered February 9, 1911, upon a trial
and conviction of giving liquor to an Indian.   Affirmed.

*O. W. Noble* and *Jesseph & Grinstead*, for appellant.

*Howard W. Stuhl*, for respondent.

ELLIS, J.—The defendant was convicted by a jury of the
crime of giving liquor to an Indian.  From the judgment
and sentence entered upon the verdict, he has prosecuted this
appeal.

[1]Reported in 121 Pac. 821.

(1)   The first assignment of error rests upon a contention that the information did not charge a crime, in that it failed to state that the liquor given away was of a character "which produces intoxication." The charging part of the information was as follows:

"That on or about the 7th day of September, A. D. 1910, in the county of Stevens, state of Washington, the said Sherman Bailey, then and there being, did then and there unlawfully, wilfully and feloniously give away spirituous liquor, to wit: One bottle thereof to one Joaquin LaFleur, the said Joaquin LaFleur then and there being a mixed blood Indian, and being more than one-eighth Indian."

The statute (Rem. & Bal. Code, § 6288) under which the information was drawn, so far as pertinent to appellant's claim, is as follows:

"Any person who shall sell, give away, dispose of, exchange, or barter any malt, spirituous or vinous liquor of any kind whatever, or any essence, extract, bitters, preparation, compound, composition, or any article whatsoever, under any name, label or brand, which produces intoxication . . . shall be guilty of a felony," etc.

It is argued that the phrase "which produces intoxication" is a limitation upon all that part of the section which precedes it; that therefore the failure to describe the liquor, though designated "spirituous," as of a kind "which produces intoxication" was fatal to the information. We cannot so hold. Spirituous liquors are in their nature intoxicating. The term requires no qualifying words to define this intrinsic quality. The qualifying phrase refers only to those essences, compounds, etc. which are enumerated immediately preceding it. Essences, compounds, etc. are not all essentially intoxicating, and therefore these terms required the additional qualification of the phrase to bring them within the plain purpose of the statute, which is to prevent the acquiring by Indians of intoxicants in any form. This interpretation is in accord with the rules of both legal and grammatical construction.

"The term 'spirituous liquors' is not synonymous with the term 'intoxicating liquors,' nor can the two expressions be used interchangeably. All spirituous liquor is intoxicating; but there are varieties of intoxicating liquor which cannot properly be described as spirituous. The latter term is properly restricted to such liquors as are produced by the process of distillation, and does not include wine, ale, beer, or other liquors which are not the product of the still, unless the terms of a statute extend its signification so as to make the term cover liquors which are not etymologically within its meaning." 23 Cyc. 59.

"All spirituous liquor is intoxicating; yet all intoxicating liquor is not spirituous." *Clifford v. State,* 29 Wis. 327; 7 Words & Phrases, p. 6610 *et seq.; State v. Reily,* 66 N. J. L. 399, 52 Atl. 1005; *Commonwealth v. Grey,* 2 Gray 501, 61 Am. Dec. 476; *Luther v. State,* 83 Neb. 455, 120 N. W. 125, 20 L. R. A. (N. S.) 1146.

"Relative and qualifying words and phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent." 2 Lewis' Sutherland, Statutory Construction (2d ed.), § 420.

In discussing a closely analogous statute, the supreme court of Alabama has said:

"We are inclined to the opinion that this phrase qualifies or refers only to the clause, 'or other liquors or beverages by whatsoever name called,' which immediately precedes it, and which two phrases, taken together, constitute one of the six classes of liquor and beverage the sale of which is prohibited. We are led to this conclusion, not alone by the composition and grammatical construction of this section of the act, but also by a reference to the history of such legislation in this and other states, and the judicial construction put upon the terms 'spirituous,' 'vinous,' 'malt,' and 'intoxicating' liquors and beverages by this and other courts. These terms each had a well defined and accepted judicial construction by the courts, when used in such statutes; and it does not appear that there was any intention to change that well accepted judicial construction. They were severally treated as being well known and defined; but the phrase, 'or other liquors or beverages by whatsoever name called,' is clearly shown not to refer to every well known or defined class, but is intended

to include any and all other classes or kinds, not embraced in the foregoing five classes named, 'which if drunk to excess will produce intoxication.' " *Marks v. State*, 159 Ala. 71, 48 South. 864, 133 Am. St. 20.

The demurrer to the information was properly overruled.

(2) It is next claimed that the court erred in permitting the introduction of the prescriptions upon which appellant purchased the alcohol, showing that the purchase was represented as for "mechanical purposes," to rebut his testimony that he purchased it for the special purpose of medicinal use in treating muscular rheumatism with which he sometimes suffered. The argument is that the purpose of the purchase being immaterial, his statement in regard thereto was not a proper subject for impeachment or contradiction. It is undoubtedly the correct rule that impeachment or contradiction is not permissible on purely collateral matters. 2 Wigmore, Evidence, § 1001. But here the evidence of which contradiction was sought was not directed to a purely collateral matter. The defendant's testimony as to the purpose of the purchase had a direct bearing upon his intention in giving the alcohol to the Indian, as tending to show that his intent was not to give it to the Indian for his own use, but to entrust it to him for carriage as the defendant claimed. Any evidence tending to contradict or discredit this testimony was therefore admissible.

"A witness' acts variant from his testimony on the stand may ordinarily be shown to impeach him. . . . Where a witness testifies to the ideals, conduct, acts, intent or motives of himself or a body of persons of which he is a member, specific acts of his at variance with his representations may be proved." 7 Ency. Evidence, pp. 149, 150.

The admission of the prescription was not error.

(3) Finally it is contended that the evidence was insufficient to support the verdict. The evidence shows that the defendant lived on the west side of the Columbia river, about three miles north of the Kettle Falls ferry; that the Indian, LaFleur, lived also on the west side of the river, some eight

miles south of the ferry; that they met at the ferry on the morning of September 7, 1910, each on the way from his home to Kettle Falls, the defendant walking and the Indian driving a wagon; that while crossing together on the ferry boat, they engaged in conversation of an immaterial nature; that they both proceeded to the town of Kettle Falls, which is about half a mile from the ferry. They both testified that the defendant asked the Indian, when they met again in town, to carry in his wagon, back to the ferry, the defendant and some twenty-five or thirty pounds of provisions, which defendant claimed he intended to buy; that at about three o'clock in the afternoon, the Indian having informed the defendant that he would soon start for his home, the defendant placed the bottle of alcohol, which he claimed to have purchased for his own use, in the jockey box of the Indian's wagon, and told the Indian he was going to get the balance of his stuff "as you say you are going to hitch up and start pretty shortly." The principal witness for the prosecution, one Charles M. Larson, a merchant of Kettle Falls, testified that he observed the actions of defendant and the Indian at the time. His testimony touching the matter was as follows:

"A. Well, I saw Bailey pull his coat out like this (indicating) and take something from under his coat and hand it to Joaquin LeFlour, and they stood there a moment and then Joaquin takes this parcel and wraps it up in a gunny sack, and that is all there is to it except I said to Joaquin— Mr. Jesseph. I object as incompetent, irrelevant and immaterial and not responsive. The Court. Tell what you saw. A. I saw him hand this parcel to Joaquin LeFlour and Joaquin wrapped the parcel up in a gunny sack and put it in his wagon. Q. What part of the wagon did he put it in? A. In the front end of the wagon. Q. Did you or did you not hear any conversation between Bailey and LeFlour? A. I did not hear any conversation. . . . Mr. Stull: Q. I believe you said that Bailey took the bottle from his coat pocket? A. No, I did not. Q. Where did he take it from? A. From under his coat. I don't think you could get a quart bottle in your pocket. Q. In what manner did he

give that bottle to him? A. Just carried it under his coat like he was concealing something. That is what caused me to notice it. He took it out like that (indicating) and handed it to Joaquin and he said something to Joaquin and Joaquin wrapped it up in the sack."

Both the Indian and the defendant denied that the defendant carried the bottle concealed under his coat. The defendant was arrested about half an hour later. At that time he had made no further purchase save that of a few cartridges. He testified that he consumed a part of the time visiting friends, though the Indian had told him he would soon start for his home.

We are of the opinion that the evidence was sufficient to sustain the verdict. Its credibility and weight were for the jury. If the jury believed Larson's testimony as to the secretive manner in which the defendant carried the bottle, this, together with the fact that half an hour afterwards he had made no further purchases and was making no apparent preparation to depart with the Indian, was sufficient to justify the jury in finding him guilty. It discredited the only explanation offered for the delivery of the liquor to the Indian. There was evidence tending to establish every element of the crime charged. The trial court having denied the defendant's motion in arrest of judgment and refused a new trial, we must decline to interfere.

"It is difficult to formulate a general rule stating the extent to which appellate courts will pass upon the weight and sufficiency of evidence and reverse because of an insufficiency of evidence, but the general rule seems to be that where there is material evidence tending to prove defendant's guilt before the jury, and the trial court refuses to set their verdict aside, an appellate court will not reverse the action of both the trial court and the jury; that it will examine the record to see whether there is evidence proper to go to the jury, and upon which a verdict of guilt might reasonably be founded, and, being satisfied on that point, will refuse to interfere, whatever may be its own opinion of the weight or preponderance of the evidence. If, however, the verdict of

the jury is altogether unsupported by any evidence whatever, or if it is against the evidence and every proper inference which is reasonably deducible therefrom, the judgment will be reversed by the appellate court." 12 Cyc. pp. 906, 907, 908.

See, also, *State v. Bailey*, 31 Wash. 89, 71 Pac. 715; *State v. Murphy*, 15 Wash. 98, 45 Pac. 729; *State v. Kroenert*, 13 Wash. 644, 43 Pac. 867; *State v. Coates*, 22 Wash. 601, 61 Pac. 726; *Miller v. Territory*, 9 Ariz. 123, 80 Pac. 321; *Kennon v. Territory*, 5 Okl. 685, 50 Pac. 172; *People v. Fitzgerald*, 138 Cal. 39, 70 Pac. 1014; *Mow v. People*, 31 Colo. 351, 72 Pac. 1069; *People v. Williams*, 133 Cal. 165, 65 Pac. 323.

We find no error in the record which would warrant a reversal. The judgment is affirmed.

DUNBAR, C. J., CROW, CHADWICK, and MORRIS, JJ., concur.