[No. 14135. *En Banc.* August 29, 1917.]

THE STATE OF WASHINGTON, *Respondent,* v.
MICHAEL FABBRI, *Appellant.*[1]

INTOXICATING LIQUORS—UNLAWFUL MANUFACTURE—STATUTES—IN-
TENT TO SELL. Under Rem. Code, § 6262-4, making it unlawful "to
manufacture, sell, barter or exchange . . . any intoxicating
liquors, or to keep any intoxicating liquors with intent to sell, barter,
exchange," etc., it is unlawful to manufacture for personal use, the
words "intent to sell" referring only to the words immediately pre-
ceding: "keep any intoxicating liquors."

STATUTES—CONSTRUCTION—PUNCTUATION. In the construction of
statutes, punctuation is a fallible standard and the last resort as an
aid in interpretation.

CONSTITUTIONAL LAW—PRIVILEGES AND IMMUNITIES—DUE PROCESS
—INTOXICATING LIQUORS—PERSONAL USE. Rem. Code, § 6262-4, pro-
hibiting the manufacture of intoxicating liquors for personal or
home consumption does not violate the 14th amendment, U. S.
Const., prohibiting the passage of any laws abridging the privileges
or immunities of citizens or depriving any person of life, liberty, or
property without due process of law; nor Const., art. 1, §§ 3, 7, pro-
viding that no person shall be deprived of life, liberty or property
without due process of law or disturbed in his private affairs or his
home invaded without authority of law.

INTOXICATING LIQUORS—"MANUFACTURE" — STATUTES. Extracting
the juice of grapes and knowingly allowing it to ferment until alco-
hol is produced, is a "manufacture" of intoxicating liquors, pro-
hibited by Rem. Code, § 6262-4.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered March 17, 1917, upon a trial
and conviction of violating the state-wide prohibition law.
Affirmed.

*S. A. Gagliardi* and *Bates & Peterson,* for appellant.

*Fred G. Remann* and *Geo. M. Thompson,* for respondent.

PARKER, J.—The defendant, Fabbri, was charged with the
offense of manufacturing intoxicating liquor in violation of
the act passed by direct vote of the people at the general

[1]Reported in 167 Pac. 133.

election of 1914. Trial in the superior court without a jury resulted in judgment of conviction against him and that he pay a fine of fifty dollars, from which he has appealed to this court.

The facts are not in controversy, they having been admitted upon the trial. They may be briefly stated as follows: Appellant, having procured a quantity of grapes, took them to his home in Tacoma, where there resided only himself and the immediate members of his family. He there placed the juice of the grapes in a receptacle where he allowed it to remain until fermentation took place, forming alcohol therein, the liquor so produced being what is commonly known as grape wine. It was concededly intoxicating liquor. At the time of his arrest, appellant had in his possession at his home fourteen gallons of the liquor so produced by him. Appellant produced the liquor and had it in his possession for his exclusive personal use, and without any intent on his part to sell, barter, exchange, or give any of it away.

The question here for our consideration is whether or not it is an offense under the terms of our prohibition law to manufacture intoxicating liquor for the exclusive use in his own home of the one who manufactures it, and whether or not our prohibition act violates any of the guaranties of our state or Federal constitution in so far as it makes such manufacturing of intoxicating liquor an offense.

The offense which it is alleged that appellant committed is defined as follows:

"It shall be unlawful for any person to manufacture, sell, barter, exchange, give away, furnish or otherwise dispose of any intoxicating liquor, or to keep any intoxicating liquor, with intent to sell, barter, exchange, give away, furnish or otherwise dispose of the same, except as in this act provided." Laws 1915, p. 3, § 4 (Rem. Code, §6262-4).

The exceptions appearing elsewhere in the act have no application to any question here presented. It is argued in appellant's behalf that the words "with intent to sell," etc., re-

fer to and qualify the words "manufacture, . . . any intoxicating liquor," as well as the words "keep any intoxicating liquor." If the words "with intent," etc., could, with any show of reason, be considered as referring to all the preceding enumerated prohibited acts, it could be said that the manufacture of intoxicating liquor would not be unlawful except it be "with intent to sell, barter, exchange, give away, furnish, or otherwise dispose of the same." But to construe the words "with intent" as referring to "manufacture" would also call for the reference of the words "with intent," etc., to the preceding words "sell, barter, exchange, give away, furnish, or otherwise dispose of," and would have the all but absurd result of having the words "with intent to sell," etc., refer back to the same words in the preceding portion of the section enumerating "sell, barter," etc., as offenses within themselves. It seems quite clear to us that the words "intent to sell," etc., refer only to that which immediately precedes, to wit, "keep any intoxicating liquor." This results in the words "manufacture . . . intoxicating liquor" constituting a complete definition of an offense, regardless of the fact of whether such manufacturing is "with intent to sell," etc., or for the personal use of the one so producing the liquor. The only thing we see in this section which suggests the construction contended for by the counsel for appellant is the fact that there is a comma preceding the words "with intent to sell," etc., which, it is insisted, means that all the preceding enumerated acts are to be qualified by the words "with intent," etc. This, we think, however, would be resorting to punctuation to ascertain the meaning of the section, when its language becomes plain regardless of such punctuation. It seems to be the well settled rule that punctuation is a fallible standard and the last resort as an aid in the interpretation of a statute, though it may be resorted to as such aid when the meaning of the statute is doubtful. 36 Cyc. 1117; *Sargent v. American Bank & Trust Co.*, 80 Ore. 16, 154 Pac. 759, 156 Pac. 431; *Northern Pac. R. Co. v. United*

*States,* 227 U. S. 355; *Starrett v. McKim,* 90 Ark. 520, 119 S. W. 824. At page 523 of the last cited decision, Chief Justice McCulloch, speaking for the court, observed:

"The rule in this country, as well as in England, is to disregard punctuation in the interpretation of statutes, except that, when all other means fail, in cases of doubtful interpretation the punctuation may be looked to as having some weight in determining the real meaning of the lawmakers. This is said, however, to be the most fallible of standards by which to interpret a writing."

We think that the manufacturing of intoxicating liquor, though only with intent on the part of the manufacturer to consume it himself, is an offense within the plain language of this statute.

It is contended in appellant's behalf that this interpretation of the language of the act renders it unconstitutional. While counsel do not cite any particular provisions of either the state or Federal constitution, their argument is in substance that appellant's constitutionally guaranteed personal and property rights will be impaired in the sustaining of his conviction under this act. Apparently counsel invoke that provision of the fourteenth amendment of the constitution of the United States reading as follows:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

And §§ 3 and 7, art. 1, of our state constitution, reading as follows:

"No person shall be deprived of life, liberty, or property without due process of law."

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

The argument seems to be that the production or possession of intoxicating liquor in one's own home for his exclusive

personal consumption is a matter with which the public has
no concern, because such possession and use cannot impair the
health, morals, or safety of the public.   A similar argument
has been, we think, effectively answered by the supreme court
of Idaho, in *In re Crane*, 27 Idaho 671, 151 Pac. 1006.   In
that case the accused was charged with having in his pos-
session intoxicating liquor.   The law of Idaho, in terms, made
such possession an offense, whether the liquor was held for
personal use or any other use, except it be acquired by per-
mit for some special purpose as in the statute provided, the
defendant not having any such permit.   Disposing of the
contention made in appellant's behalf, the writer of the
opinion says:

"No fixed rule has been discovered by which to determine
whether or not a statute of the nature of the one under con-
sideration is a proper exercise of the police power, but it
may be said the questions propounded to the courts are:
Does the statute purport to have been enacted to protect the
public health, the public morals, or the public safety?   Has
it a real and substantial relation to those objects, or is it,
upon the other hand, a palpable invasion of rights secured
by the constitution?   Questions as to the wisdom and ex-
pediency of such legislation address themselves to the legis-
lative, not to the judicial branch of the government."

Then, following a review of the decisions here relied upon
by counsel for appellant, the writer continued:

"Probably the author of none of these opinions would hesi-
tate in holding that the sale of intoxicating liquor may be
prohibited as a legitimate exercise of the police power, and
that such a law would not abridge any of the privileges or
immunities of the citizens in such a way as to violate any
constitutional provision.   Still it must be admitted that, if
the possession of such liquor 'can by no possibility injure or
affect the health, morals, or safety of the public,' the sale is
equally harmless, for it only transfers the possession from
one person to another.   The fact is that the harm consists
neither in the possession nor sale, but in the consumption of
it.   That is the evil which the people of Idaho, acting through
the legislature, are trying to eradicate,   .   .   ."

The court concluded that the legislature had power to make it an offense to manufacture liquor, regardless of the fact that its manufacture might be for the personal use. of the one manufacturing it, upon the theory that the prohibition of such manufacturing of liquor had a real substantial relation to the ultimate object to be attained by the law, which was plainly within the field of unrestrained constitutional legislation. The decision in that case was apparently rested largely upon the. decision of the supreme court of the United States in *Mugler v. Kansas*, 123 U. S. 623, which was quoted from by the Idaho court at some length. In that case, one of the counts in the indictment charged the defendant with having manufactured intoxicating liquor in Kansas. The Kansas statute provided, among other things, "that any person or persons who shall manufacture . . . intoxicating liquors shall be guilty of a misdemeanor." One of the contentions made in the defendant's behalf is stated and disposed of by Justice Harlan, speaking for the supreme court of the United States, as follows:

"It is, however, contended, that, although the state may prohibit the manufacture of intoxicating liquors for sale or barter within her limits, for general use as a beverage, 'no convention or legislature has the right, under our form of government, to prohibit any citizen from manufacturing for his own use, or for export, or storage, any article of food or drink not endangering or affecting the rights of others.' The argument made in support of the first branch of this proposition, briefly stated, is that in the implied compact between the state and the citizen certain rights are reserved by the latter, which are guaranteed by the constitutional provision protecting persons against being deprived of life, liberty, or property, without due process of law, and with which the state cannot interfere; that, among those rights is that of manufacturing for one's use either food or drink; and that while, according to the doctrines of the Commune, the state may control the tastes, appetites, habits, dress, food, and drink of the people, our system of government, based upon the individuality and intelligence of the citizen, does not claim to control him, except as to his conduct to others, leav-

ing him the sole judge as to all that only affects himself.
. . . it is difficult to perceive any ground for the ju-
diciary to declare that the prohibition by Kansas of the
manufacture or sale, within her limits, of intoxicating
liquors for general use there as a beverage, is not fairly
adapted to the end of protecting the community against the
evils which confessedly result from the excessive use of ardent
spirits. There is no justification for holding that the state,
under the guise merely of police regulations, is here aiming
to deprive the citizen of his constitutional rights; for we
cannot shut out of view the fact, within the knowledge of all,
that the public health, the public morals, and the public
safety, may be endangered by the general use of intoxicating
drinks; nor the fact, established by statistics accessible to
every one, that the idleness, disorder, pauperism, and crime
existing in the country are, in some degree at least, traceable
to this evil. *If, therefore, a state deems the absolute pro-
hibition of the manufacture and sale, within her limits, of
intoxicating liquors* for other than medical, scientific, and
manufacturing purposes, *to be necessary to the peace and
security of society, the courts cannot, without usurping leg-
islative functions, override the will of the people as thus ex-
pressed by their chosen representatives.* They have nothing
to do with the mere policy of legislation. Indeed, it is a
fundamental principle in our institutions, indispensable to
the preservation of public liberty, that one of the separate
departments of government shall not usurp powers committed
by the constitution to another department. *And so, if, in
the judgment of the legislature, the manufacture of intoxicat-
ing liquors for the maker's own use, as a beverage, would
tend to cripple, if it did not defeat, the effort to guard the
community against the evils attending the excessive use of
such liquors, it is not for the courts, upon their views of what
is best and safest for the community, to disregard the legis-
lative determination of that question. So far from such a
regulation having no relation to the general end sought to
be accomplished, the entire scheme of prohibition, as em-
bodied in the constitution and laws of Kansas, might fail, if
the right of each citizen to manufacture intoxicating liquors
for his own use as a beverage were recognized.* Such a right
does not inhere in citizenship. Nor can it be said that gov-
ernment interferes with or impairs any one's constitutional

rights of liberty or of property, when it determines that the manufacture and sale of intoxicating drinks, for general or individual use, as a beverage, are, or may become, hurtful to society, and constitute, therefore, a business in which no one may lawfully engage. Those rights are best secured, in our government, by the observance, upon the part of all, of such regulations as are established by competent authority to promote the common good. No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare."

We have italicized that portion of the learned justice's remarks which we think is conclusive as against the contentions made in appellant's behalf here. *State v. Marastoni* (Ore.), 165 Pac. 1177; *Clark Distilling Co. v. Western Maryland R. Co.*, 242 U. S. 311, Ann. Cas. 1917B 845, L. R. A. 1917B 1218.

Some contention is made in appellant's behalf that the extracting of the juice of the grapes and allowing it to ferment and thereby letting it become intoxicating liquor was not manufacturing within the meaning of our statute. It seems to us this contention is wholly without merit. Of course, if one should put up some kind of fruit juice and it, without his knowledge, should ferment and become intoxicating liquor, he would probably be considered not guilty of violating our statute by that act alone. But should he put up some kind of fruit juice with the intent of having it so ferment and become intoxicating liquor, or should knowingly keep it after it had so become intoxicating liquor, we think it could hardly be contended with any show of reason that he had not violated the plain provisions of the statute. Some argument is made that such a process is not manufacturing. Apart from the fact of a person's want of knowledge and intent in producing liquor by fermentation, we cannot agree with such contention.

We conclude that the judgment must be affirmed. It is so ordered.

ALL CONCUR.