[No. 27820. *En Banc.* June 10, 1941.]

THE STATE OF WASHINGTON, on the Relation of Adjustment Department of Olympia Credit Bureau, Inc., Appellant, v. ELLIS C. AYER, as Clerk of the Superior Court for Thurston County, Respondent.[1]

[1]Reported in 114 P. (2d) 168.

*Ralph L. J. Armstrong,* for appellant.

*Smith Troy* and *John S. Lynch, Jr.,* for respondent.

ROBINSON, C. J.—The Adjustment Department of Olympia Credit Bureau, Inc., having secured a judgment in the justice court for Olympia precinct, Thurston county, Washington, filed a transcript thereof in the office of the county clerk. Thereafter, in an attempt to collect its judgment, it filed an affidavit in due form, tendered such costs and deposit as required, and requested the clerk of the superior court of Thurston county to issue a writ of garnishment naming the state of Washington as garnishee. The clerk refused to issue the writ, stating that he had no authority to do so. This action was thereupon instituted, praying that the superior court direct the clerk to issue the writ. After a hearing upon the merits the court dismissed the action. The relator appeals, and contends that it is entitled to the writ by virtue of chapter 15,

Laws of 1933, p. 136, Rem. Rev. Stat. (Sup.), §§ 680-1 to 680-3 [P. C. §§ 8026 to 8027-1], inclusive.

Before attempting to unravel the mysteries of that strikingly badly drawn statute, it seems advisable to inquire,—What was the status of the judgment when the relator applied for the writ of garnishment? Rem. Rev. Stat., § 445-1 [P. C. § 8110-12], reads as follows:

"The lien of judgments upon the real estate of the judgment debtor shall commence as follows:  . . .

"(c) Judgments of a justice of peace rendered in the county in which the real estate of the judgment debtor is situated from the time of the filing of a duly certified transcript of the docket of the justice of the peace with the county clerk of the county in which such judgment was rendered, and upon such filing said judgment shall become to all intents and purposes a judgment of the superior court for said county; . . . "

The section is an amendment and reenactment, by chapter 60, Laws of 1929, p. 56, of § 2 of chapter 42, Laws of 1893, p. 65, Rem. Rev. Stat., § 450, Bal. Code, § 5136, which was construed in *Grant v. Cole*, 23 Wash. 542, 545, 63 Pac. 263. The provisions of that statute were substantially the same as those of the existing statute, and, in part, the language is identical, as will be noted from the first quotation hereinafter made from *Grant v. Cole*, to wit:

"The transcript from the justice's court was certified and filed in accordance with § 5136, Bal. Code. It will be observed that the statute declares that 'upon such filing said judgment shall become to all intents and purposes a judgment of said superior court of said county.' "

The court noted that the statutes of some states require that an execution first issue from the justice court and be returned unsatisfied before the transcript can be filed in the superior court, and that the statutes

of other states require the filing of an affidavit that the judgment had not been paid, and, continuing, said:

"But the statute of 1893 omits such requirements, and declares the judgment in the superior court when the transcript is filed. We are satisfied that, *upon the proper filing of the certified transcript from the justice's court and its entry by the clerk of the superior court, under the plain language of the statute, the judgment of the justice's court then becomes to all intents and purposes the judgment of the superior court,* and execution may thereafter issue from the superior court as in the case of executions upon other judgments. *It would seem apparent that, upon the filing of the certified copy from the justice of the peace, the powers of the justice's court are ended, and any further proceedings in the cause must be taken in the superior court.*" (Italics ours.)

In the later case of *Noerdlinger v. Huff,* 31 Wash. 360, 72 Pac. 73, a judgment was recovered against Noerdlinger in a justice's court of Skagit county, and a transcript thereof was filed with the clerk of the superior court of Skagit county. An attempt was made to sell Noerdlinger's property in Chehalis county, and he brought an action in Chehalis county against the sheriff thereof to enjoin the sale, alleging that the justice court had never served process upon him, and contending that its judgment was void. The court held that the attack on the judgment was collateral and dismissed it, saying, in part:

"Certain stipulated facts were submitted at the hearing, which, if used as evidence in a direct attack upon the judgment, would bear upon the question of its validity. But they could not be considered in this collateral action, under the rule of this court above stated. Under § 5136, Bal. Code, when the judgment of the justice was certified to the office of the clerk of the superior court of Skagit county it became 'to all intents and purposes a judgment of said superior court,' and as such was subject to attack in that court, where

evidence not in the record could be introduced to show that the judgment was void."

These decisions have not been overruled, criticized, or modified by our later decisions. Moreover, they are in accord with the general law, as stated in 34 C. J. 93, § 252:

"The effect of transferring a judgment by transcript from an inferior court to a superior court is to divest the former of all jurisdiction over the case and the judgment, and while the filing of the transcript or abstract does not make the inferior court's judgment the judgment of the higher court, it does become, in most of the states, to all intents and purposes a judgment of the latter court, at least for the purpose of enforcement, which may thereafter issue process on it, modify it, or grant other relief against it, vacate it, or strike it off the docket for cause shown."

It must accordingly be held that, when the relator filed its transcript of judgment in the superior court, the jurisdiction of the justice court over the cause came to an end, and the judgment became, to all intents and purposes, a judgment of the superior court of Thurston county.

Do §§ 680-1 to 680-3, inclusive, authorize the issuance of a writ of garnishment against the state upon such a judgment? We quote these sections:

"§ 680-1. *The state of Washington,* all counties, cities, towns, school districts and other municipal corporations *shall be subject to garnishment in the su*perior and *justice courts,* but only after judgment shall have been entered against the defendant in the main action: *Provided, That the state of Washington shall not be subject to garnishment in justice courts.*

"§ 680-2. No regular judgment in garnishment shall be entered against the state of Washington or any municipal corporation, but the judge of the superior court, *or justice of the peace shall by written order command the auditing officer, or body of such state of Washington* or municipal corporation *to audit and pay to the*

*judgment creditor the amount due from the garnishee to the principal defendant,* not exceeding the amount of the judgment in the main action, whereupon the same shall be paid by the garnishee: *Provided,* Nothing in this act shall be construed to impair the rights of defendants to claim exemptions of wages as provided by law.

"§ 680-3. *The venue of such garnishment proceeding shall be the same as the original action. The writ shall be issued by the court having jurisdiction of such original action* and shall require such garnishee defendant to appear and answer such writ in said court in like manner and with the same effect as other writs of garnishment issued by such court after judgment." (Italics ours.)

When the italicized portions of § 680-1, as above quoted, are read consecutively, omitting the interstitial matter, we get the following disconcerting result:

"The state of Washington . . . shall be subject to garnishment in the . . . justice courts, . . . : *Provided,* That the state of Washington shall not be subject to garnishment in justice courts."

If this were the only difficulty, it could be readily solved as a similar difficulty was solved in the very recent case of *State ex rel. Wilson v. King County,* 7 Wn. (2d) 104, 109 P. (2d) 291; that is, by the application of the general rule that a proviso which appears to be repugnant to the enacting clause, may be treated as an exception thereto, if it be not contra to the whole thereof, but merely limits its application. But, unfortunately, the matter is not so simple as that; for, not content with saying, in the first section of the act, that the state shall be subject to garnishment in the justice court, and following it with an emphatic proviso, in the same section, that it shall not, the legislature proceeded to again say, in the next section, that it should. At least, it is so said by plain implication;

for, it is therein provided that, when the state is garnisheed, no regular judgment shall be entered against it, but

" . . . the judge of the superior court, *or justice of the peace* shall by written order command the auditing officer, or body of such state of Washington . . . to audit and pay to the judgment creditor the amount due from the garnishee to the principal defendant, . . . " (Italics ours.)

We are, therefore, brought face to face with another established rule of construction, to the effect that, where different parts or sections of the same statute are in conflict, the latest in order of position will prevail. *State ex rel. Tacoma R. & P. Co. v. Public Service Commission,* 101 Wash. 601, 172 Pac. 890. This rule, however, as is the case with many other rules of construction, is not inflexible, and, if the first of conflicting clauses is clear and explicit, and the other, less so, the former, notwithstanding its position, will prevail over the latter. Black on Interpretation of Laws (2d ed.), 327. We are of the opinion that, as between the proviso of the first section and the implied provision of the second section, that is the case here; and we are further of the opinion that the specific proviso of the first section should be regarded as an exception to the general provision thereof, and accordingly hold that the act does not authorize a justice court to issue a writ of garnishment against the state.

Suppose a judgment of a justice court be filed in a superior court,—Does the act authorize the issuance of a writ of garnishment, founded thereon, against the state? Section 680-3 provides, in part:

"The venue of such garnishment proceeding shall be the same as the original action. The writ shall be issued by the court having jurisdiction of such original action . . ."

The difficulty arises out of the first sentence of § 680-3, rather than the second. The second sentence of the section reads, in part: "The writ shall be issued by the court having jurisdiction of such original action." As we have seen earlier in the opinion, we have long ago held that, when a transcript of a judgment rendered in a justice court is filed in the superior court, the justice court loses all jurisdiction over the action and the judgment becomes "to all intents and purposes the judgment of the superior court," and execution may be issued upon it as upon other superior court judgments. *Grant v. Cole, supra.* We have also held that it is so far the judgment of the superior court that an attack upon it is a direct attack, *Noerdlinger v. Huff, supra,* and other courts have held that the superior court may modify such a judgment or grant other relief against it or strike it from the docket. 34 C. J. 93, § 252. We think it must be held that the superior court, in such a case, has "jurisdiction of the original action." If it has not, no other court has, for the jurisdiction of the justice court has wholly ceased.

The first sentence of § 680-3 offers greater difficulty. "The venue of such garnishment proceeding shall be the same as the original action." Does it mean that the venue of the garnishment proceeding must be the same as the original venue of the action to which it is ancillary, or that the venue must be where the venue of the original action is at the time the writ is applied for? Strictly speaking, the venue of an action is the place where it is tried, but the word is also very commonly used to designate the court which has jurisdiction of the action. When a transcript of a justice court judgment is filed in the superior court, the justice court loses all jurisdiction over the cause and the superior court acquires it. It seems permissible to say that the venue of that action has been shifted to, and now is in,

the superior court; that is, the superior court has become the venue of the original action. It would seem, at the time the writ of garnishment was applied for, that the venue of the original action was in the superior court of Thurston county. It was there, or nowhere, for that was the only court that had jurisdiction of the action.

The respondent has cited *Thompson v. Kirkpatrick*, 18 Ark. 580, and *Weimeister v. Singer*, 44 Mich. 406, 6 N. W. 858. The statutes involved in these cases are sufficiently different from our own as to render those decisions of little or no persuasive force.

We are of the opinion that the legislature did not intend, in enacting chapter 15, Laws of 1933, to authorize justice courts to issue writs of garnishment against the state, but that it did intend to authorize superior courts to do so, not only upon judgments which they themselves had rendered, but also upon judgments brought up from the justice courts by transcript, and thus, pursuant to previous legislation, made their own judgments "to all intents and purposes."

The judgment appealed from is reversed and the cause remanded to the superior court of Thurston county, with directions to issue the writ prayed for.

STEINERT, BEALS, JEFFERS, SIMPSON, DRIVER, and MAIN, JJ., concur.

MILLARD, J. (concurring)—The challenged statute may have been ineptly drawn, as the majority observes, but if it is valid—the majority holds that it is—it should have effect according to the purpose and intent of the lawmakers. This is a primary rule of construction.

"All the rules should be considered when it is necessary to construe a statute, and no particular rule should be followed to the exclusion of all others when to do so would lead to illogical conclusions." 59 C. J. 944, § 563.

The courts, in pursuance of the general object of giving effect to the intention of the legislature, are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof. 59 C. J. 964.

"Since all statutes must be interpreted before they can be applied, might not the rule be announced that all statutes are subject to construction, and if there be more than one possible construction, that meaning will be adopted which most reasonably seems to be the one intended by the legislature, after the court has considered all intrinsic and extrinsic aids? Since in practice this largely represents the method actually pursued by the court in its search for the legislative intent, there should be no real objection to recognizing that which already is a reality." Crawford's Statutory Construction, 283, § 175.

BLAKE, J., concurs with MILLARD, J.

