[No. 31819.   Department One.   October 18, 1951.]

ALBERT J. DAVIS, *Appellant*, v. JAMES A. GIBBS *et al.,*
*Respondents*, JOSEPH WICKLUND, *Appellant*.[1]

'Reported in 236 P. (2d) 545.

*J. Edmund Quigley,* for appellant Davis.

*Hile Hoof & Shucklin,* for appellant Wicklund.

*Harroun & Shidler, Robert W. Moody, Charles O. Carroll,* and *K. G. Smiles,* for respondents.

WEAVER, J.—This is an action to restrain the proper officials from canvassing the vote of a special election held to determine whether a certain territory should be annexed to the city of Seattle. The trial court denied the injunction.

Two questions are presented: (1) Did the petition for annexation have sufficient signers? and (2) Was adequate statutory notice published of the special election?

The assignments of error are all directed to the question of whether the findings of the trial court support the judgment. We, therefore, accept the findings as verities. *LaLone v. Smith, ante* p. 167, 234 P. (2d) 893.

Rem. Rev. Stat., § 8897 [P.P.C. § 384-3], so far as here material, read, prior to amendment (Laws of 1951, chapter 248), as follows:

"A petition shall be presented to the board of county commissioners of such county, signed by at least twenty per centum of the qualified electors of such county, residents within the limits of the territory proposed to be annexed to such city, who voted at the last previous election as shown by the official pollbooks, . . ."

The trial court found as a fact that:

". . . it was stipulated . . . that in the event *Rem. Rev. Stat. 8897* requires that in addition to being qualified electors within the 'Annexation Area,' and resident therein persons entitled to sign the said petition for annexation must in addition thereto have themselves voted at the immediately preceding general election held in November, 1948, the valid signatures on said petition for

annexation constituted less than the statutory requirement of 20%."

All parties agree that a petition signer must at least be (1) a qualified elector of the county, and (2) a resident within the territory to be annexed. Respondents contend that the clause *"who voted at the last previous election"* relates back to *"twenty per centum of the qualified electors,"* and thus, that it is inserted in the statute for the sole purpose of requiring that a *number equal to twenty per centum* of the qualified electors (predicated upon residents of the area who voted in the last election) be signers of the petition. Appellants, on the other hand, contend that the clause *"who voted at the last previous election"* relates back to its immediate antecedent, *"residents within the limits of the territory,"* and thus requires, in addition to the foregoing, that a petition signer, to be qualified as such, must have voted in the *"last previous election."*

■ Where no contrary intention appears in a statute, relative and qualifying words and phrases, both grammatically and legally, refer to the last antecedent. *State v. Bailey,* 67 Wash. 336, 121 Pac. 821; *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 148 Pac. 28; *Tabb v. Funk,* 170 Wash. 545, 17 P. (2d) 18; *Smith v. Department of Labor & Industries,* 8 Wn. (2d) 587, 113 P. (2d) 57; Crawford, Statutory Construction, 331; 2 Horack's Sutherland Statutory Construction (3rd ed.) 448. See, also, *State v. Hemrich,* 93 Wash. 439, 161 Pac. 79.

The last antecedent is the last word which · can be made an antecedent without impairing the meaning of the sentence. *Traverse City v. Township of Blair,* 190 Mich. 313, 157 N. W. 81.

■ Obviously, the adjective clause "who voted at the last previous election" cannot refer to "limits," "territory," or "city." It refers to, and modifies, "residents," which is the last antecedent that can be used without impairing the meaning of the sentence. Where one goes, the other must follow. Therefore, since a petition signer must be (1) a qualified elector (2) who is a resident within the limits of

the territory proposed to be annexed, it follows that such resident must (3) have voted in the last previous election. In view of the stipulation, the petition was deficient.

Rem. Rev. Stat., § 8898 [P.P.C. § 384-5], so far as here material to the second question raised, reads as follows:

"Upon the granting of said petition said board [of county commissioners] shall thereupon give notice of an election to be held in such proposed territory to be annexed, not less than thirty nor more than sixty days thereafter, for the purpose of determining whether the qualified electors thereof desire the annexation of the same to such city. *Such notice* shall particularly describe the boundaries of said territory and shall state the objects thereof as prayed in said petition, and *shall be published* for at least two weeks prior to the date of such election *in a newspaper printed and published within the limits of the said territory to be annexed,* or, if there be no such newspaper, then in a newspaper printed and published in the city to which said territory is proposed to be annexed . .. ." (Italics ours.)

The trial court found as a fact:

"That notice of said election was published . . . in the Ballard News, a weekly community newspaper printed and published in the City of Seattle, King County, Washington, *but not printed or published or distributed* in the 'Annexation Area.' . . . That at all times material to this action there was *published* in the 'Annexation Area' and *printed* in the 'Annexation Area' a weekly community newspaper, The Lake City Citizen, which Lake City Citizen was, at all times material to this action, legally qualified to publish legal publications and notices in King County, Washington. . . . That . . . the number of voters who voted for annexation of said territory to the City of Seattle was 4,079, and the number of voters who voted against said annexation was 4,049.

". . . that the total number of persons who voted at said election on January 9, 1951, to-wit: 8,127 [sic], is approximately *80%* of the number of residents of the annexation area who voted at the General Election on November 5, 1951; that any literate person in the 'Annexation Area' could not help but be informed in the essential issues involved in the election and the date thereof." (Italics ours.)

It appears from the findings that practically every conceivable means of notoriety and publicity invented and

devised by science and zealous publicity experts, except sky-writing, were used prior to the election in the annexation area. Those for and those against annexation organized into opposing factions. They used everything from television to letters for school children to take home to their parents.

Notice of election was posted as required by the statute, but no effort was made to publish the official notice in a newspaper printed and published within the limits of the territory, although such a newspaper was available.

■ This court is firmly committed to the doctrine of "substantial compliance." No purpose could be served by an analysis of all of our former decisions in which the doctrine is discussed and applied. Most of them are cited in *School Dist. No. 81 of Spokane County v. Taxpayers of School District No. 81*, 37 Wn. (2d) 669, 225 P. (2d) 1063, where we said:

"Through a long line of cases, this court has held that statutes . . . calling for the publication of election notices, are not mandatory and will be considered to have been substantially complied with *when an attempt has been made to comply with the statute*, and when wide publicity has been given the matter and the great body of the electors have had actual notice of the time and place of the holding of the election and of the question submitted, unless the statute provides that failure to observe the formalities shall render the election void. [Citing cases.]" (Italics ours.)

■ In all cases where we have approved the doctrine of substantial compliance, that which was done, although irregular or deficient, *tended* to accomplish that which would have been accomplished had the statute been followed specifically. For example, in the *School District No. 81* case, *supra*, where notice had been published in the *proper medium*, but not for the proper length of time, we held, in the light of the unofficial publicity, that the election was valid. But before there can be substantial compliance, there must be *some attempt* to comply with the statute. Here, we have no attempt to publish in compliance with the statute. The paper in which it was published was not even circulated in the annexation area. Hence, there was

no official printed publication of the election. Posting of notice cannot be a substitute for publication. The doctrine of substantial compliance ought not to be carried to the extent of holding that unofficial publication and dissemination of information of an impending election can take the place of, and practically dispense with, required statutory notice, even though such requirement be, in a measure, directory rather than mandatory. We have never held that a complete lack of official published notice may be supplanted by publicity. We have, in fact, held to the contrary. *P. U. D. No. 1 of Pend Oreille County v. Newport,* 38 Wn. (2d) 221, 228 P. (2d) 766. Should it be, then our "government of laws" is in peril.

Although not determinative of our decision, we are not able to say, under the circumstances, that the result of the election would not have been different had the official notice been published in the newspaper designated by the statute, since approximately 2,032 qualified electors failed to vote, when 31 of them might have changed the result.

█ We are unable to agree with the trial court that lack of official published notice was remedied by substantial compliance. This phase of the case is controlled by *Dunn v. Centralia,* 153 Wash. 495, 280 Pac. 26, where notice of the election was published for only one day instead of for ten days; and by *P. U. D. No. 1 of Pend Oreille County v. Newport, supra,* where no notice was published at all.

The judgment is reversed and the cause remanded, with instructions to enter a decree holding the purported annexation election of January 9, 1951, to be null and void, and permanently enjoining respondents from acting thereunder.

MALLERY, GRADY, HILL, and DONWORTH, JJ., concur.