[No. 37729.   En Banc.   October 21, 1965.]

CHARLES J. SCHNEIDER et al., *Appellants*, v. ANDREW FORCIER et al., *Respondents.**

*Sullivan & Jones* and *Hubert M. Jones*, for appellants.

*Bell, Ingram & Smith*, by *Lewis A. Bell*, for respondents.

HUNTER, J.—This is an appeal from dismissal of a suit in which the plaintiffs, Charles J. and Mary Lou Schneider,

*Reported in 406 P.2d 935.

husband and wife, seek damages for personal injuries suffered by Charles J. Schneider in an automobile accident.

The accident occurred after sunset, November 27, 1962, on a shoulderless, two-lane highway known as "Broadway Road" in rural Snohomish County. An automobile driven by Charles H. Herberg, collided with the rear of plaintiffs' pickup truck, which had stalled on the highway while being used by plaintiffs to push their family automobile. The collision catapulted the pickup truck forward and into the rear of the family automobile, thereby crushing the plaintiff, Charles J. Schneider, who was standing between the stalled vehicles, and causing him the injuries of which plaintiffs complain.

Named as defendants were Charles H. Herberg and wife, and Andrew Forcier and wife, owners of the automobile Herberg was driving.

The trial court found that the pickup truck's taillights were visible at a distance of 3/10 of a mile; that defendant Herberg failed to observe the parked truck until within 100 feet of it; and that he was driving at a speed substantially in excess of the speed limit. It concluded that Herberg drove in a negligent manner.

It further found, however, that plaintiffs had failed to display warning devices of any kind, though they had reasonable time in which to do so. It concluded that they thereby violated RCW 46.37.450, which requires certain vehicles, among them "motor trucks," to display specified warning devices when disabled under such conditions; that the plaintiffs' violation of the statute constituted negligence per se and was a proximate cause of the collision and resultant injuries. It therefore held that though plaintiffs would otherwise be entitled to a judgment for damages against all defendants, the plaintiffs' contributory negligence barred recovery. Plaintiffs appeal.

Plaintiffs contend that RCW 46.37.450 does not apply to a motor truck such as theirs, whose width, as the trial court here found, is under 80 inches. Accordingly, the plaintiffs assign error to the trial court's holding that their recovery was barred because of contributory negligence.

The applicable statutes are as follows:

RCW 46.37.440:

(1) No person shall operate *any motor truck, passenger bus or truck tractor over eighty inches in overall width* upon any highway outside the corporate limits of municipalities at any time unless there shall be carried in such vehicle the following equipment . . . . (Italics ours.)

RCW 46.37.450:

(1) Whenever *any motor truck, passenger bus, truck tractor over eighty inches in overall width, trailer, semitrailer or pole trailer* is disabled upon the traveled portion of any highway or the shoulder thereof outside of any municipality at any time when lighted lamps are required on vehicles the driver of such vehicle shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway . . . .

. . . .

(6) The flares, fusees, red electric lanterns, portable red emergency reflectors and flags to be displayed as required in this section shall conform with the requirements of RCW 46.37.440 applicable thereto. (Italics ours.)

Plaintiffs contend that when RCW 46.37.440 and RCW 46.37.450 are considered in pari materia the legislative intent is unclear. They concede that RCW 46.37.450, considered alone, literally exempts of the classes named only truck tractors whose widths are 80 inches and under from the requirement of *displaying* warning devices. But plaintiffs contend that an exemption from *carrying* such devices is extended to vehicles in all classes named in RCW 46.37-.440 whose widths are 80 inches and under. They argue that the two statutes therefore conflict and that the ambiguity requires us to look past the language used to determine the legislative intent, as evidenced in the legislative history of the enactments. We perceive no such conflict between the two statutes.

▮▮ Our first resort is to the context and subject matter of the legislation, consistent with the recognized canon of statutory construction and interpretation that the legis-

lative intent is first to be deduced, if possible, from what it said. *Martin v. Aleinikoff*, 63 Wn.2d 842, 844, 389 P.2d 422 (1964). Where no contrary intention appears in the statute, a qualifying phrase such as "over eighty inches in overall width" in RCW 46.37.440, refers back both grammatically and legally to the last antecedent, which is "truck tractor." *Martin v. Aleinikoff, supra; Davis v. Gibbs*, 39 Wn.2d 481, 236 P.2d 545 (1951); *In re Andy*, 49 Wn.2d 449, 302 P.2d 963 (1956); 2 Sutherland, Statutory Construction, § 4921 (3d ed. 1943, Supp. 1964). There is no language in the statute otherwise indicating a contrary intent and the "last antecedent" rule therefore applies.

Any inference of such a contrary intent is dispelled by the *latter* statute, RCW 46.37.450, which in clear and explicit language exempts only truck tractors 80 inches or under in overall width from the statutory requirement of displaying warning devices. Reading the statutes in pari materia the rule of construction applies, that as between two conflicting parts of a statute, that part latest in order of position will prevail, where the first part is not more clear and explicit than the last part. *State ex rel. Adjustment Dep't of Olympia Credit Bureau v. Ayer*, 9 Wn.2d 188, 114 P.2d 168 (1941).

The plaintiffs contend that the legislative history evinces an intention that all vehicles listed in RCW 46.37.450, *supra*, were intended to benefit from the "80 inch" exemption and that the contrary language resulted from a mistake in punctuation. The legislative history shows that a Senate amendment (House Journal 1955—Ex.1955, p. 1137) ultimately adopted specifically struck the words of a House amendment relative to gross weight and directed: " . . . after the word 'tractor' and before the comma (,) preceding the word 'trailer' insert the words 'over eighty inches in overall width' . . . ." In view of this precise language we find no basis for the plaintiffs' argument that the legislature committed a mistake in punctuation in the amendment of the statute.

The plaintiffs further argue that the legislature, by the amendment, must have intended to accomplish a

meaningful result; that to construe the statute to exempt only truck tractors 80 inches or under in overall width from the requirement of the statute and not the other vehicles listed of the same dimensions constitutes an absurdity. This reasoning is unsound. It disregards the primary purpose of the statute, which is to give protection to the traveling public from the hazards of stalled vehicles on the highway. The plaintiffs' proposed construction of the statute would, by exempting all classes named in the statute, afford less protection to the traveling public from such hazards. If we consider the plaintiffs' argument as questioning the reasonableness of the classification of vehicles brought within the exemption, it would constitute an attack upon the validity and constitutionality of the statute. This issue was not raised in the assignments of error, and is not before us for our determination upon this appeal. Rule on Appeal 43, RCW vol 0.

█ Plaintiffs contend that the trial court's construction of RCW 46.37.450 exempting truck tractors 80 inches or under in overall width is further absurd for the reason that there are no truck tractors which are 80 inches or under in overall width, and that this court should take judicial notice of such fact. We cannot say in the absence of evidence that truck tractors of such dimensions are in fact nonexistent, or that this asserted fact is notoriously and commonly known and that such information is readily available. *State ex rel. O'Connell v. Yelle*, 51 Wn.2d 594, 320 P.2d 1079 (1958); *State ex rel. Humiston v. Meyers*, 61 Wn.2d 772, 380 P.2d 735 (1963); 31 C.J.S. *Evidence* § 9.

For the reasons heretofore stated we are in agreement with the determination by the trial court that the plaintiffs were within the ambit of RCW 46.37.450; that they failed to display warning devices in pursuance thereof and that such failure constituted contributory negligence per se, which barred recovery.

The judgment is affirmed.

HILL, DONWORTH, WEAVER, OTT, HAMILTON, and HALE, JJ., concur.

FINLEY, J. (dissenting)—The majority opinion puts together and presents, in my judgment, an unreasonable thesis, legal conclusion, or interpretation respecting certain statutory language used by the legislature concerning the regulation of highway motor-vehicle traffic. This thesis is that the driver of a truck-tractor stalled on a public highway at night need not place flares to warn other users of the public highway, if the *truck-tractor* is 80 inches wide, or less; but the driver of a *pickup truck,* regardless of breadth—whether very small or very large, simply because it is a *"motor truck,"* as referred to in RCW 46.37.440—when it is stalled, must place flares on the highway to warn the traveling public of danger. This, at least statutorily speaking, or in the jargon of statutory interpretation, "poses a palpable absurdity." Thus, I think it follows that the majority opinion is out of kilter with the cornerstone of statutory interpretation or construction, namely, "no construction should be given to a statute which leads to gross injustice or absurdity." *Lenci v. Seattle,* 63 Wn.2d 664, 671, 388 P.2d 926 (1964), quoting *In re Horse Heaven Irrigation Dist.,* 11 Wn.2d 218, 226, 118 P.2d 972 (1941).

The inconsistency or statutory incongruity in the result emphasized by the majority is dramatically revealed when we look to the definition of a "motor truck" in RCW 46.04.310:

"Motor truck" means any motor vehicle *designed* or used for the transportation of commodities, merchandise, produce, freight, or animals. (Italics mine.)

Thus, under the majority opinion, all drivers of private pickup trucks with campers, and even of station wagons and cars equipped with removable racks (See Ops. Atty. Gen. (1927-28)), can be classified as "motor trucks" and, therefore, be held negligent per se for failure to set out flares when stalled on the highway; whereas, the driver or owner of a much, much larger truck-tractor which just happens to be 80 inches narrow, or less, will not be negligent per se when he fails to set out flares under the same circumstances. The inconsistency seems to me quite obvious.

The result reached by the majority relies or is dependent upon the rule that "where no contrary intention appears in the statute, a qualifying phrase . . . refers back both grammatically and legally to the last antecedent, . . . " The majority's reliance upon this mechanical rule of statutory interpretation ignores the wisdom expressed by this court as long ago as 1917:

> It seems to be the well settled rule that punctuation is a fallible standard and the *last resort* as an aid in the interpretation of a statute, though it may be resorted to as such aid when the meaning of the statute is doubtful. *State v. Fabbri*, 98 Wash. 207, 209, 167 Pac. 133 (1917). (Italics mine.)

Modern authorities echo this philosophy or approach re statutory problems:

> Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. Thus a proviso is construed to apply to the provision or clause immediately preceding it. But where the *sense of the entire act* requires that the qualifying words apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent. Thus it is apparent that the rule relating to relative or referential terms *is of no great force* and will be applied only when its application is consistent with the legislative intention. 2 Sutherland, Statutory Construction, §4921 (3d ed. 1943). (Italics mine and footnotes omitted.)

The essence of the matter is the fact that the rules or maxims of statutory interpretation should be recognized and treated as nothing more than aids or tools which may or may not be pertinent or useful in determining the meaning of statutory language. There is nothing mandatory about the applicability of a rule of statutory interpretation, *i.e.*, nothing compelling in an ultimate sense in determining the meaning of statutory language. See for instance *In re Horse Heaven Irrigation Dist., supra,* wherein this realistic approach to the rules of construction was adopted as the law of this state. Actually, today it should be clear, without citation of authority and without pro-

longed explanation, that every statutory maxim or rule of interpretation has its countervailing or opposite maxim or rule. As Mr. Justice Frankfurter said:

Nor can canons of construction save us from the anguish of judgment. *Such canons give an air of abstract intellectual compulsion to what is in fact a delicate judgment,* concluding a complicated process of balancing subtle and elusive elements.

Insofar as canons of construction are generalizations of experience, they all have worth. In the abstract, they rarely arouse controversy. Difficulties emerge when canons compete in soliciting judgment, because they conflict rather than converge. *For the demands of judgment underlying the art of interpretation, there is no vademecum.* Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum. L. Rev. 527, 544 (1947). (Italics mine.)

Justice Frankfurter is not alone in his observations about the canons of statutory construction. Among others, see Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed,* 3 Vand. L. Rev. 395 (1950); Loyd, *Equity of a Statute,* 58 U. Pa. L. Rev. 76 (1909); Radin, *Realism in Statutory Interpretation and Elsewhere,* 23 Calif. L. Rev. 157 (1934); Radin, *Early Statutory Interpretation in England,* 38 Ill. L. Rev. 16 (1943); Thorne, *Equity of a Statute and Heydon's Case,* 31 Ill. L. Rev. 202 (1936).

The cases are legion wherein the courts have properly refused to follow technical, mechanical, plug-in formulas re problems of statutory construction. We have often stated that statutory construction is the procedure of ascertaining legislative intent, and this procedure is one of reason and common sense. For example, see *Kelso v. Tacoma,* 63 Wn.2d 913, 918, 390 P.2d 2 (1964), where we said:

When a statute is susceptible of a reasonable interpretation, it is our duty to carry out the manifest intent of the legislature. (Citations omitted.)

These principles should be first applied to the statute to ascertain its meaning. Thereupon, if the intent of the legis-

lature is not clear, as a *last resort*, the courts may fall back on grammatical rules.

Perhaps repetition of the statutes involved herein will be an aid to clarify discussion:

RCW 46.37.440:  Certain vehicles to carry flares or other warning devices. (1) No person shall operate any motor truck, passenger bus or truck tractor over eighty inches in overall width upon any highway outside the corporate limits of municipalities at any time unless there shall be carried in such vehicle the following equipment . . . .

RCW 46.37.450:  Display of warning devices when vehicle disabled. (1) Whenever any motor truck, passenger bus, truck tractor over eighty inches in overall width, trailer, semitrailer or pole trailer is disabled upon the traveled portion of any highway or the shoulder thereof outside of any municipality at any time when lighted lamps are required on vehicles the driver of such vehicle shall display the following warning devices upon the highway . . . .

RCW 46.37.440 requires all vehicles over 80 inches in overall width to carry flares. This seems so reasonable as to make it almost obvious that the legislators believed that there is a lesser danger when a pickup or small bus, now common on the roads, is stalled on the highway than when a vehicle larger than 80 inches in width is stalled on the road. This distinction or classification seems a reasonable and common-sense one, because it is probably easier to see around a vehicle that is narrower than 80 inches. Thus again, it seems commonsensical and reasonable to read the 80-inch exception in RCW 46.37-.440 to apply *not only* to truck-tractors, but also to "any motor truck," and any "passenger bus." In fact, to limit the 80-inch provision in RCW 46.37.440 to "truck-tractors" tends toward the incongruous, because the reason for the provision—*i.e.*, ability to see around a motor vehicle—applies as well to motor trucks and passenger busses.

The majority relies on the wording of RCW 46.37.450 to support their construction of the statutes. However, I read that statute to apply even more clearly the 80-inch provi-

sion to all three categories, *i.e.*, motor trucks, passenger busses, and truck-tractors. Emphasis has been placed on the fact that in RCW 46.37.450 the 80-inch provision comes before the words "trailer, semitrailer or pole trailer" in the following language:

(1) Whenever any motor truck, passenger bus, truck tractor over eighty inches in overall width, trailer, semi-trailer or pole trailer is disabled . . . .

This language only stresses the legislative concentration on the different hazards presented by stalled vehicles of different sizes. RCW 46.37.450 shows that the legislature decided that a motor truck, passenger bus, or truck-tractor 80 inches or under, stalled on the highway, does not present enough danger in itself to require supplementing its normal lights with flares. But, if the truck-tractor, even though 80 inches or under, is pulling a trailer, semitrailer, or pole trailer, then the potential danger is such that the legislature required flares, regardless of the size or width of the combined vehicles. This is just common sense.

The above construction of the statute is supported by its legislative history. In 1947, the Motor Vehicle Code was amended to read as follows:

A. (1) No person shall operate any motor truck, passenger bus, or truck tractor upon any highway . . . .

. . . .

B. (1) Whenever any motor truck, passenger bus, truck tractor, trailer or semi-trailer is disabled . . . . Laws 1947, ch. 267, §7.

Note that there were no exceptions in the 1947 act. In 1955, the Motor Vehicle Code was again extensively amended. However, the above language was not initially changed. H. Jour. 1955, 51-52; H. Bill No. 51, Wash. State House Bills, 1955, at page 26 and 27. Then the bill was amended so that the involved sections read as follows:

Sec. 44. (1) No person shall operate any motor truck, passenger bus or truck tractor *in excess of six thousand pounds net weight* upon any highway . . . .

Sec. 45. (1) Whenever any motor truck *in excess of six thousand pounds gross weight*, passenger bus, truck

tractor, trailer, semitrailer or pole trailer is disabled . . . . H. Jour. 1955, 432; Wash. State House Bills, H. Bill No. 51, at page 26 and 27. (Amendments in italics.)

At this point, it seems clear to me that the legislature must have intended the statute to be amended to exclude small vehicles from its operation. Also note that in Sec. 45 the six thousand-pound limitation applied only to motor trucks.

Then the bill went to the Senate, and the above sections were amended to read:

Sec. 44. (1) No person shall operate any motor truck, passenger bus or truck tractor *over eighty inches in overall width* upon any highway . . . .

Sec. 45. (1) Whenever any motor truck, passenger bus, truck tractor *over eighty inches in overall width*, trailer, semitrailer, or pole trailer is disabled . . . . H. Jour. 1955, p. 1137. (Amendments in italics.)

These amendments were accepted by the House with a vote of 93 to 0. H. Jour. 1955, pp. 1137-38. Notice that Sec. 45 was amended in several respects. The House amendment applied the weight limitation only to motor trucks. But in the Senate amendment, the width limitation was moved so that it came after truck-tractors. In my judgment, the House apparently intended a limitation to apply to motor trucks, so the House accepted the transposition of the limitation, placing it after truck-tractors because the limitation would *still* apply to motor trucks. Thus, this limited legislative history supports the thesis that the legislature intended that the limitation apply to motor trucks, passenger busses, as well as to truck-tractors.

In summary, I believe that the majority has reached an unnecessary and needlessly incongruous result in holding that a truck-tractor 80 inches in width does not have to place flares when stalled on a public highway; but a motor truck, for instance a pickup under 80 inches, does have to use flares or be barred from recovery when rear-ended by a motorist who fails to see the lights on the truck. A reasonable common-sense reading of the statute, supported by legislative history, leads me to the conclusion that the

legislature intended the 80-inch limitation to apply to all motor trucks, passenger busses, and truck-tractors.

For the reasons indicated, I dissent.

ROSELLINI, C. J., concurs with FINLEY, J.